Joseph **SPRIGGS, on Behalf of Himself and as Next Friend of Infants, Linda Ann Johnson, Donnie Ray Johnson, Wanda Kay Johnson, Appellant,**

v.

The **ALTHEIMER, ARKANSAS SCHOOL DISTRICT NO. 22 et al., Appellees.**

No. 18831.

United States Court of Appeals
Eighth Circuit.

Nov. 9, 1967.

■

---

Gabrielle A. Kirk, New York City, for appellant; Jack Greenberg and Michael Meltsner, New York City, George Howard, Jr., Pine Bluff, Ark., and John W. Walker, Little Rock, Ark., on the brief.

Harley Cox, Jr. and Charles D. McKay, of Coleman, Gantt, Ramsay & Cox, Pine Bluff, Ark., for appellees.

Before VOGEL, Chief Judge, and GIBSON and LAY, Circuit Judges.

PER CURIAM.

Altheimer School Board charged school tuition to the appellant Negro children, who allegedly stayed with their grandfather, Joseph Spriggs, within the school district. Tuition was charged on the basis that their mother lived within another but contiguous district. The children and their grandfather bring this action to enjoin the School Board from charging for transportation and tuition, on the grounds that the charges are in violation of the Arkansas laws [1] and are discriminatory and in violation of the equal protection clause of the Fourteenth Amendment. The oldest child, Linda Ann Johnson, had always attended the all Negro school, the Martin School, within the district, but under the newly invoked freedom of choice plan,[2] chose to attend the previously all white Altheimer School to finish her last and twelfth year in school. She had never been charged tuition before her election to attend the Altheimer School. The other two children, both half-sisters of Linda Ann, are enrolled at the previously all colored school within the district and for the first time they are being charged tuition as well. At the time of the litigation they were in the second and third grades respectively.

The district court found that the tuition charge was not intended to be discriminatory, that the School Board was in good faith, and therefore there was no constitutional infringement of the appellants' rights; and that the determination of the children's residence was a question of state law to be determined by the parties in the state courts, if necessary. The children and their maternal grandfather appeal.[3] We reverse and remand in accordance with the following directions:

1. It is incumbent upon the district court to determine state law when it coalesces with a federal question otherwise establishing jurisdiction. United States v. Shock, 379 F.2d 29 (8 Cir. 1967) wherein we relied upon Meredith v. City of Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943); Propper v. Clark, 337 U.S. 472, 69 S.Ct. 1333, 93 L.Ed. 1480 (1949); Allegheny County v. Frank Mashuda Co., 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959); Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964). The constitutionality of the state statute is not challenged whereby the district court in its discretion might abstain from decision as in Harrison v. NAACP, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959). There is no necessity to delay decision here or to defer to state action. As Judge Murrah stated in Stapleton v. Mitchell, 60 F.Supp. 51, 55 (D.Kans.1945):

> "We yet like to believe that wherever the Federal courts sit, human rights under the Federal Constitution are always a proper subject for adjudication, and that we have not the right to decline the exercise of that jurisdiction simply because the right asserted may be adjudicated in some other forum."

Discrimination by reason of the children's race is alleged. Federal jurisdiction is clearly established under 42 U.S.C.

---

1. Section 80–1501 provides:
 "The public schools of any school district shall be open and free to all persons between the ages of six [6] and twenty-one [21] years, residing in that district, and the directors of any district may permit older or younger persons to attend the schools under such regulations as the State Board of Education may prescribe." Ark.Stats.Ann. (1960 Replacement).

2. See Kelley v. Altheimer, Ark. School Dist. No. 22, 378 F.2d 483 (8 Cir. 1967), where this court approved the Board's adopted freedom of choice plan.

3. This court, upon posting of a proper bond, granted an interlocutory injunction pending the appeal against appellee's suspending the children for failure to pay the tuition.

1983.[4] See McNeese v. Board of Education, 373 U.S. 668, 671, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963).

> "It is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961).

2. Determination of the constitutional question could be resolved in appellants' favor without consideration of the legality of the action under state law. See Monroe v. Pape, supra 365 U.S. at 171–187, 81 S.Ct. 473. However, under the present facts before us a decision on the federal question cannot be properly weighed without considering whether the conduct of the appellee School Board in charging tuition to appellants is legal under Arkansas law. As stated in Brown v. Board of Education, at page 493 of 347 U.S. 483, 74 S.Ct. 686, at page 691, 98 L.Ed. 873.

> "In these days, it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education. Such an opportunity, where the state has undertaken to provide it, is a right which must be made available to all on equal terms."

■ 3. The district court recited that the "ultimate question is the residence of the children"; this question is properly before the district court and should be decided.

■ 4. The stated Altheimer School policy on tuition, that children will be charged tuition when their parents live outside the district, is subservient to state law which requires "open and free" school districts for "all persons between the ages of six [6] and twenty-one [21] years, *residing in that district*." (Our emphasis.) It has long been held that where the relief sought under the Constitution and under the state law is the same, if the district court finds a violation of state law, it may decide the issue without reaching the constitutional question. Cf. Bohler v. Callaway, 267 U.S. 479, 489, 45 S.Ct. 431, 69 L.Ed. 745 (1925). Therefore, if the district court finds that the children, all or any of them,[5] are residents of the school district, the district court may enjoin appellee from charging tuition under the state statute without passing on the constitutional question involved.

■ 5. The district court in passing upon the question of residency should receive additional evidence if desired by either party, to assure fair and full consideration of all issues.

■ 6. Appellees urge that remand is not necessary for a determination of appellants' residency by the district court since Arkansas law requires a finding that a child's residence is necessarily that of his parent or legal guardian. We disagree. The Arkansas cases[6] relied upon relate to the general rule that a child's *domicile* is that of his natural father. Arkansas cases in other areas recognize that "residence" generally differs from "domicile." In Smith v. Union Co., 178 Ark. 540, 11 S.W.2d 455 at 456, the Arkansas court said:

> " 'Residence' * * * means the place of actual abode, and not an es-

---

4. On the surface, the present facts appear to be identical in kind to our rejection of the student's claim under § 1983 in Byrd v. Sexton, 277 F.2d 418 (8 Cir. 1960). However, there we specifically pointed out that "no issue of race is in this case." 277 F.2d at 421.

5. The facts concerning Linda Ann are significantly different from the other Johnson children. Her father and mother are divorced. Her mother is remarried. Her stepfather has his own family. While in Arkansas she has always lived with her grandfather. She has always attended school in the Altheimer district without tuition. Our observation here is not intended to reflect upon the facts concerning the other children, who also have lived with their grandfather since birth, other than to demonstrate that separate factual circumstances exist for each child in considering their residency.

6. Young v. Hiner, 72 Ark. 299, 79 S.W. 1062 (1904); Nunn v. Robertson, 80 Ark. 350, 97 S.W. 293 (1906).

tablished domicile or home, to which one expects to return and occupy at some future time."

See Stephens v. AAA Lumber Co., 238 Ark. 842, 384 S.W.2d 943; Wheat v. Wheat, 229 Ark. 842, 318 S.W.2d 793; Missouri Pac. R. Co. v. Lawrence, 215 Ark. 718, 223 S.W.2d 823. The overwhelming weight of authority does not require a legal guardianship to influence a finding of residency of the child in school tuition cases. Yale v. West Middle School Dist., 59 Conn. 489, 22 A. 295, 13 L.R.A. 161 (1890); Board of Trustees of Stanford Graded Common School Dist. v. Powell, 145 Ky. 93, 140 S.W. 67, 36 L.R.A.,N.S., 341 (1911); Martins v. School Dist., 101 Neb. 258, 162 N.W. 631 (1917); Anderson v. Breithbarth, 62 N.D. 709, 245 N.W. 483 (1932); Mariadahl Children's Home v. Bellegarde School Dist., 163 Kan. 49, 180 P.2d 612 (1947); Horowitz v. Board of Education, 217 App.Div. 233, 216 N.Y.S. 646 (1926); Board of Education, etc. v. Dille, 109 Ohio App. 344, 165 N.E.2d 807, 11 Ohio Ops.2d 139 (1959); Bon Homme County Independent School Dist. No. 1 of Springfield v. Bordewyk, 59 S.D. 559, 241 N.W. 619 (1932); State ex rel. School Dist. No. 1 v. Thayer, 74 Wis. 48, 41 N.W. 1014 (1889). These cases illustrate that school tuitional laws governing the residency of children should be interpreted liberally to insure a free education for the greatest number of children.

 Appellees urge that although the children live with their grandfather, that their mother shows them as dependents on her income tax and has on occasion driven the children to school, as well as showing an interest in them by attending PTA meetings. But residency standards should not necessarily be such as to deter natural parents from taking an active and even financial interest in the welfare of children who are victims of broken homes or are otherwise regrettably deprived of living with their natural parents. Although the proper custody and care of the second and third grade youngsters in the present case, away from their father and mother is difficult to understand, this is not the proper forum to decide such questions. On the other hand, if the residency of the children with their grandfather is only temporary for the primary purpose of attending school in a district other than where their parents reside, then tuition under the statutes would be proper. This is the question of fact that is properly before the court and the one that must be resolved.

7. Notwithstanding the Superintendent's statement that only a legal guardianship would qualify Mr. Spriggs' residence as that of the children, the evidence reflects that generally the tuitional policy of the school fairly recognizes that children residing with relatives under circumstances of "loco parentis" are residents of the school district. The policy reads in part:

"A pupil who lives with relatives or friends who will return to the home of his parents or guardians after the school term ends will be required to pay tuition."

The inference is obvious. It would appear, at least in the past, the School Board recognized that those children living with relatives or even friends on a permanent basis would be considered residents of the district.[7]

 In conclusion, we cannot help observing that appellants should appreciate that tuitional charges to minor Negro children who are not residents of the district are not discriminatory in any sense. Compare Holland v. Board of Public Instruction of Palm Beach County, Fla., 258 F.2d 730 (5 Cir. 1958). On the other hand, all parties must by now appreci-

7. Mr. Walker, the Altheimer School Superintendent, testified:
"Q. My question is, those pupils who live with the relatives and the friends the year around, they don't return to the home of their parents at the close of school; what about those students?
"A. If they lived in the district with a permanent address, I would think they would be entitled to attend the school without charge.
"Q. Without tuition, and ride the buses?
"A. Right."

ate that human relationships in racial problems are best solved by and through cooperative and voluntary efforts and understandings rather than through court decrees. It is indeed difficult under the circumstances herein prevailing to understand how the present facts rose to the necessity for litigation. We do not challenge the lower court's finding under the present record that the School Board was in good faith in making an independent determination of the children's residency. On the other hand, it is easily understandable why appellants considered the School Board's action as discriminatory. The revised charge of tuition was "unfortunately timed" with Linda Ann's exercise of choice to change to the formerly all-white school. Yet the record is clear that very little if any effort was made by either of the parties to ascertain the actual facts existing short of this unfortunate litigation.

Upon further and proper investigation we hope this litigation may become moot before retrial. The Altheimer Superintendent acknowledged after hearing evidence at the original trial that "from what I've heard here this morning they [the children] reside with Joseph Spriggs."

Reversed and remanded in accordance with the opinion.