Dolores Allene STREET

v.

COBB COUNTY SCHOOL DISTRICT.

Civ. A. No. 81–998.

United States District Court,
N. D. Georgia,
Atlanta Division.

Aug. 31, 1981.

Edward C. Saunders, Daniel Lee Dean, Atlanta, Ga., for plaintiff.

Richard H. Still, Marietta, Ga., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ORINDA D. EVANS, District Judge.

This matter is before the Court on Plaintiff's Motion for a Preliminary Injunction to enjoin the Cobb County School District from preventing her participation in the day school program at South Cobb High School. An evidentiary hearing was held on July 31, 1981. On August 25, 1981, the Court entered an Order granting Plaintiff's Motion. The following findings of fact and conclusions of law are entered in support of that Order.

The basic facts, most of which are undisputed, are found to be as follows: Plaintiff is a seventeen year old who has attended South Cobb High School for the past two years. Until late April, 1981, she lived with her mother and stepfather, who reside in the South Cobb High School District; thereafter, she moved to an apartment to live with her eighteen year old boyfriend and then to her boyfriend's parents' home (also in the South Cobb High School District) where she and her boyfriend presently live.

On May 15, 1981, the high school learned of Plaintiff's living arrangements. She was called to the principal's office and informed that she could no longer attend South Cobb High School because the school district's policies were interpreted to permit only "resident students" to attend. A "resident student" is defined in the school board's policies as "a student who resides with his parents or in the event of divorce, with the custodial parent and/or legal guardian within the Cobb County School District." (Defendant's Exhibit 4).

Plaintiff came to the Court in late May, seeking a temporary restraining order to permit her to complete her junior year at South Cobb High. This restraining order was granted.

Plaintiff seeks preliminary and permanent injunctive relief to permit her to now proceed to commence and complete her senior year at the high school.

The School District's position is two-fold: first, it says Plaintiff does not fit the definition of "resident student" and therefore she cannot attend. It says the rule is based on the reasonable notion that when the student's deportment or academic problems require it, the school should be able to contact his or her adult guardian to obtain information or assistance. Secondly, the School District contends that because of Plaintiff's unconventional living arrangements, her presence in the school population might be a bad influence on impressionable students. The School District points out that it has an adult education program which is available to Plaintiff and that it is not seeking to totally deny her an education.

The evidence at the hearing showed that the School District does permit married students under the age of eighteen who are living apart from their parents to attend the day school program. Also, the School District permits unwed pregnant students to continue in the day school program, provided such students live with a parent or guardian.

Since November 18, 1980, Plaintiff has been employed part-time at a Richway Department Store. Both before and after she left home, she has kept her wages and used them to buy clothing and other items for herself. Since Plaintiff has left home, her mother has attempted to provide her with financial support but Plaintiff has refused

such assistance. Plaintiff's mother, who testified at the hearing, does not approve of or consent to Plaintiff's present living arrangements. She stated she wanted her daughter to come home, or alternatively, she said she would consent to her daughter's marrying the boyfriend.

Plaintiff testified that she had traditionally made B's and C's in high school. However, in the spring quarter of 1981, her grades were D's and F's. Plaintiff nonetheless states a definite desire to return to South Cobb High this fall. She considers the adult education program inferior to the day school program.

Having set forth the essential facts, the Court now turns to its dispositive findings and conclusions of law.

For reasons that will be discussed hereinafter, the Court believes the central finding to be made by the Court is whether or not Plaintiff is an emancipated or unemancipated minor. This finding is important both to the Court's analysis of her substantive claim and also to Plaintiff's entitlement to maintain this lawsuit in her own name. If Plaintiff is an unemancipated minor, she may not maintain this suit on her own but rather suit would have to be maintained by her guardian, in this case, her mother. If her mother were not to find the maintenance of the suit in the daughter's interest, that might very well terminate the litigation.[1]

In Georgia, an unemancipated minor is subject to the power of his or her parent or guardian. An emancipated minor is not. *See* Ga.Code Ann. § 74–108. There are several ways for a minor to become emancipated. First, marriage emancipates. *See McGregor v. McGregor*, 237 Ga. 57, 226 S.E.2d 591 (1976). Additionally, emancipation may be shown by one of the grounds set out in Ga.Code Ann. § 74–108. *Hicks v. Fulton County Dep't of Family and Children Services*, 155 Ga.App. 1, 270 S.E.2d 254 (1980). Section 74–108 provides, in part, that parental power may be lost by:

(1) Voluntary contract, releasing the right to a third person.

(2) Consenting to the adoption of the child by a third person.

(3) Failure to provide necessaries for the child, or abandonment of the child.

(4) Consent to the child's receiving the proceeds of his own labor, which consent shall be revocable at any time.

(5) Consent to the marriage of the child, who thus assumes inconsistent responsibilities.

(6) Cruel treatment of the child.

Looking at the totality of circumstances involved here, the Court finds, not without some hesitation, that Plaintiff is an emancipated minor. She has been living away from home for four months and has evidenced no intent to return. Since November 1980, she has worked and furnished her own income, which income has neither been requested by nor received by her mother. Although her mother has made it clear she wants her daughter to come home, she has also stated she will consent to her daughter's marriage. Finally, Plaintiff is only eight months away from the age of majority.

The Court now looks to see what implications Plaintiff's status as an emancipated minor has for the outcome of this case. She brings this action under 42 U.S.C. § 1983, which proscribes the deprivation of federally guaranteed rights under color of state law. The Cobb County School District is, of course, an arm of the State. The federally guaranteed right involved, according to Plaintiff, is the equal protection guaranteed by the Fourteenth Amendment of the United States Constitution. Her argument is that the School District does not treat emancipated minors equally, because the School District permits married minors to attend the day school program, but not single emancipated minors.

The initial step in equal protection analysis is to determine the nature of the

---

1. Of course, the Court has the power to appoint a "next friend" other than a natural guardian if the natural guardian and child have conflicting

interests. However, it is unclear whether this case presents a situation where legal interests conflict, or merely one where opinions differ.

interest affected or classification involved. *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). When a state rule is attacked as violating the equal protection clause it must be examined against one of two constitutional tests. Where the state rule impinges upon a fundamental right or creates a classification which is based upon inherently suspect criteria, the required standard of review is that of strict scrutiny. Under strict scrutiny it must be shown that the classification furthers a compelling state interest and that the means chosen to effectuate that purpose is the least restrictive alternative available. *San Antonio School District v. Rodriquez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1972). Where no fundamental right is infringed upon or no suspect class is present, the appropriate constitutional test is rational relationship. Under "rational relationship" the classification must be examined to determine whether it is rationally related to a legitimate state purpose. *San Antonio, supra; Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972).

The Supreme Court has held that the right to an education is not a "fundamental" right. *San Antonio, supra*. No suspect classification is involved. Therefore, the test to be applied is the "rational relationship" test.

■ Is a School District policy which permits a married minor, but not an emancipated single minor to attend school rationally related to a legitimate state purpose? Put another way, is there a rational basis for distinguishing between the two groups? The Court has no difficulty concluding that the School District's stated purpose for the rule does not support the distinction. The School District has contended that it needs access to a parent or guardian who has control over the child when same is required in connection with academic or deportment matters involving the student. In the case of a married minor, the testimony was that the school would simply deal with the student, not his or her spouse. It would seem to the Court that the same situation is presented as to an emancipated minor, who in the Court's view is not apt to be any more or less mature than a married student similarly situated.

■ This then leaves for the Court's consideration the School District's alternate position, namely, that it desires to exclude from the school population those who may set an undesirable example for impressionable students. The Fifth Circuit has held that a teacher's aide who has borne a child out of wedlock may not be excluded from employment for that reason alone. *Andrews v. Drew Municipal Separate School District*, 507 F.2d 611 (5th Cir. 1975). The court's reasoning, in part, was that students were not apt to ". . . seek out knowledge of the personal and private family lifestyles of teachers . . . ." *Id.* at 617. The Court is not certain that the same rationale would apply to the facts presented here, but the Court finds it unnecessary to resolve that issue. This is because the School District permits pregnant students to attend the day school program. Thus, assuming the School District may legally enforce policies calculated to foster morality in personal living arrangements, the Court can see no rational basis for excluding someone in Plaintiff's situation, but not excluding a pregnant student. In other words, the School District's stated alternate reason fails equal protection analysis too.

In summary, the Court finds that the School District's policy as applied to Plaintiff is in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. For that reason, it cannot be enforced against her so as to exclude her from the School District's day school program.