769 F.2d 1323
 54 USLW 2119, 26 Ed. Law Rep. 1015
 Buford HORTON and Laretta Horton, Husband and Wife, and
Phillip Allen Roberson, By and Through His Guardians and
Next Friends, Buford Horton and Laretta Horton; Janie A.
Williams and Rhonda Williams, By and Through Janie Williams,
Next Friend, Appellants,
v.
MARSHALL PUBLIC SCHOOLS, Herbert Cleek, Individually and in
His Official Capacity as Superintendent of Marshall Public
Schools; Spence Holder, Individually and in His Capacity as
Principal of Marshall Public School; Coy England, Cecil Ray
Jenning, Jr., Bob Blare, James Hubbard, and Melvin Evans,
Individually and in their Respective Official Capacities as
Members and Directors of the School Board of the Marshall
School District, Appellees.
 No. 84-1914.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 15, 1985.
Decided Aug. 9, 1985.
Opinion on Denial of Rehearing En Banc Oct. 17, 1985.
 
 Marcia McIvor (argued) Fayetteville, Ark., for appellants.
 W. Paul Blume (argued) Little Rock, Ark., for appellees.
 Before HEANEY, ROSS, and McMILLIAN, Circuit Judges.
 ROSS, Circuit Judge.
 
 
 1
 The plaintiffs in this case challenged the facial constitutionality of the domicile requirement embodied in ARK.STAT.ANN. Sec. 80-1501 (Supp.1983) as it relates to minor children who wish to attend public school in Arkansas. This statute provides as follows:
 
 
 2
 The public schools of any school district in this State shall be open and free through completion of the secondary program, to all persons between the ages of six (6) and twenty-one (21) years who are domiciled in the district or, in the case of minors, whose parents or legal guardians are domiciled in the district, or to all persons between these ages who have been legally transferred to the district for education purposes.
 
 
 3
 ARK.STAT.ANN. Sec. 80-1501 (Supp.1983) (emphasis added). The plaintiffs also challenged the constitutionality of the Marshall Public School District's application of Sec. 80-1501 to exclude plaintiffs Phillip Roberson (age seventeen) and Rhonda Williams (age fifteen) from attending school in the Marshall school district during the 1982-83 school year. Both children lived in the Marshall school district but were excluded from school because they were minors and did not have a parent or legal guardian living in the district. Finally, the plaintiffs alleged that the Marshall Public School District failed to provide Phillip and Rhonda with procedural due process when it excluded them from school.
 
 
 4
 After a bench trial, the district court found no constitutional infirmity in either the statute or in the exclusion of Phillip and Rhonda from school, Horton v. Marshall Public Schools, 589 F.Supp. 95 (W.D.Ark.1984). The plaintiffs now appeal. We find that the Marshall Public School District's application of Sec. 80-1501 violated the equal protection and due process clauses and accordingly, reverse and remand.
 
 FACTS
 
 5
 Phillip Roberson moved to Marshall on September 13, 1982, to live with his mother and his aunt and uncle--Laretta and Buford Horton. Phillip's parents are divorced. Previously, Phillip had lived in Missouri with his father. Due to economic and domestic problems, however, Phillip's father had become unable to provide a suitable home for him.
 
 
 6
 After the move to Marshall, Phillip enrolled in the eleventh grade at Marshall High School. Sometime later his mother moved to Missouri, but left Phillip with the Hortons.
 
 
 7
 Spence Holder, the principal of Marshall High School, questioned Phillip on January 4, 1983, and discovered that Phillip's mother had left Marshall. Holder then informed Phillip that he would no longer be able to attend school in Marshall, since he did not have a parent or legal guardian living in the district.
 
 
 8
 Phillip's name was officially removed from the school rolls on January 7, 1983. Subsequently, on February 11, 1983, Phillip was readmitted to school on the basis that his aunt and uncle had initiated guardianship proceedings in order to be named his legal guardians.
 
 
 9
 In Rhonda William's case, the testimony established that Rhonda moved to Marshall on about April 4, 1983, to live with her aunt and uncle--Janie and Leo Williams. Previously, Rhonda had lived with her parents in Alabama. Due to her father's drinking problem, however, her mother had decided it was not safe for Rhonda at home.
 
 
 10
 On April 6, 1983, Rhonda's aunt took Rhonda to Marshall High School to enroll her in the ninth grade. Spence Holder informed Rhonda's aunt that Rhonda could not be admitted to school unless a legal guardianship was obtained, since Rhonda's parents were not living in the Marshall school district.
 
 
 11
 Rhonda's aunt investigated the possibility of becoming Rhonda's legal guardian, but never initiated a guardianship proceeding because Rhonda's mother refused to consent to a guardianship. Consequently, Rhonda was never admitted to Marshall High School. She was forced to repeat the ninth grade, in another school district, the following year.
 
 
 12
 On April 20, 1983, Phillip and his aunt and uncle, Laretta and Buford Horton, filed this action pursuant to 42 U.S.C. Sec. 1983. The complainants sought Phillip's reinstatement as a student in good standing,[1] a declarative judgment that ARK.STAT.ANN. Sec. 80-1501 (Supp.1983), and the Marshall Public School District's policy, adopted pursuant to Sec. 80-1501, of denying admission to minor children who do not have a parent or legal guardian living in its school district, violated the due process and equal protection clauses, and damages. Subsequently, Rhonda and her aunt, Janie Williams, intervened and filed a complaint seeking relief similar to that sought by Phillip and the Hortons.[2]DISCUSSION
 
 
 13
 A. Facial Constitutionality of Sec. 80-1501.
 
 
 14
 In finding Sec. 80-1501 constitutional, the district court dealt solely with the issue of whether the statute's use of the term "domicile", as opposed to the term "residence", made the statute unconstitutional.[3] First, the court determined that under Arkansas law the term "domicile" for purposes of admission to public schools means residence accompanied by a "present intention to remain." Horton v. Marshall Public Schools, supra, 589 F.Supp. at 102. The court then observed that in Martinez v. Bynum, 461 U.S. 321, 331, 103 S.Ct. 1838, 1844, 75 L.Ed.2d 879 (1983), the Supreme Court stated: "at the very least, a school district generally would be justified in requiring school-age children or their parents to satisfy the traditional, basic residence criteria--i.e., to live in the district with a bona fide intention of remaining there--before it treated them as residents", (emphasis added, footnote omitted), for purposes of admission to public schools. Since Sec. 80-1501, as interpreted by the district court, used this same standard, the court concluded that the statute was free from constitutional concerns.
 
 
 15
 On appeal, the parties do not contest the district court's finding regarding the "domicile" issue. Instead, appellants argue that Sec. 80-1501 is unconstitutional because it denies minor children admission to public school in a particular school district unless they have a parent or legal guardian living in that school district.
 
 
 16
 Both parties fail to discuss the fact that the statute challenged in this case, Sec. 80-1501 (Supp.1983), was repealed by an Act passed in Arkansas' 1983 legislative session. 1983 Ark. Acts 60. This repeal became effective on February 8, 1984--one day after the February 7, 1984 trial and approximately three and one-half months before the district court entered its judgment on June 1, 1984. The repealed Sec. 80-1501 (Supp.1983) was replaced by a statute which reads as follows:
 
 
 17
 The public schools of any school district in this State shall be open and free through completion of the secondary program to all persons between the ages of five (5) and twenty-one (21) years whose parents or legal guardians are domiciled in the district and to all persons between those ages who have been legally transferred to the district for education purposes. Any person eighteen (18) years of age or older may establish a domicile separate and apart from his or her parents or guardians for school attendance purposes.
 
 
 18
 ARK.STAT.ANN. Sec. 80-1501 (1984 Interim Supp.) (emphasis added).
 
 
 19
 The plaintiffs have never moved to amend their pleadings to challenge the new Sec. 80-1501. Further, it does not appear that the parties adequately informed the district court of the change in Sec. 80-1501, as the district court opinion cites the repealed Sec. 80-1501 as the statute at issue. Horton v. Marshall Public Schools, supra, 589 F.Supp. at 99 n. 5. Thus, the issue of the constitutionality of Sec. 80-1501 (1984 Interim Supp.) was neither raised in the pleadings nor tried by the consent of the parties. See FED.R.CIV.P. 15(a), (b).
 
 
 20
 Due to the repeal of Sec. 80-1501 (Supp.1983), the question of that statute's facial constitutionality was moot even before the district court rendered its judgment, and will not be considered by this court. The question of the facial constitutionality of the new statute, Sec. 80-1501 (1984 Interim Supp.), is also not properly before us due to plaintiffs' failure to move to amend their pleadings to challenge the new Sec. 80-1501.
 
 
 21
 We are unable to ignore plaintiffs' failure to move to amend because the language of the two versions of Sec. 80-1501 differ in respect to a critical question involved in this case: whether minor children are actually precluded from attending school unless they have a parent or legal guardian "domiciled" in the particular school district they wish to attend. See Broadrick v. Oklahoma, 413 U.S. 601, 618 n. 16, 93 S.Ct. 2908, 2916 n. 16, 37 L.Ed.2d 830 (1973) ("a federal court must determine what a state statute means before it can judge its facial constitutionality."). In view of our decision in Spriggs v. Altheimer, Arkansas School District No. 22, 385 F.2d 254 (8th Cir.1967), the question was an open one as to Sec. 80-1501 (Supp.1983), and remains an open one as to Sec. 80-1501 (1984 Interim Supp.).[4]
 
 
 22
 These procedural problems preclude an analysis of whether either version of Sec. 80-1501 is facially constitutional. Thus, plaintiffs' request for a declaratory judgment that Sec. 80-1501 is unconstitutional is denied.
 
 
 23
 Plaintiffs, however, have also sought a declaratory judgment that the Marshall Public School District's policy, adopted pursuant to the school district's interpretation of Sec. 80-1501 (Supp.1983), of excluding minor children from school solely because the children do not have a parent or legal guardian living in the district, is unconstitutional. In addition, plaintiffs have sought damages for the Marshall school district's application of this policy to exclude Phillip and Rhonda from school. Thus, we must still address the issue of whether the Marshall Public School District's policy and application of that policy was constitutional.
 
 
 24
 B. Constitutionality of Marshall's Policy.
 
 
 25
 The Marshall Public School District relies primarily upon Martinez v. Bynum, supra, to support the constitutionality of its policy, adopted pursuant to its interpretation of Sec. 80-1501 (Supp.1983), of excluding minor children from its schools solely because the children do not have a parent or legal guardian living in the district. In Martinez, the Court explained that, in general, bona fide residence requirements are constitutional in the public school context. The rationale for this position was set forth as follows:
 
 
 26
 A bona fide residence requirement, appropriately defined and uniformly applied, furthers the substantial state interest in assuring that services provided for its residents are enjoyed only by residents. Such a requirement with respect to attendance in public free schools does not violate the Equal Protection Clause of the Fourteenth Amendment. It does not burden or penalize the constitutional right of interstate travel, for any person is free to move to a State and to establish residence there. A bona fide residence requirement simply requires that the person does establish residence before demanding the services that are restricted to residents.
 
 
 27
 There is a further, independent justification for local residence requirements in the public-school context. As we explained in Milliken v. Bradley, 418 U.S. 717, 94 S.Ct. 3112, 41 L.Ed.2d 1069 (1974):
 
 
 28
 "No single tradition in public education is more deeply rooted than local control over the operation of schools; * * *." 418 U.S., at 741-42, 94 S.Ct., at 3126 * * *.
 
 
 29
 The provision of primary and secondary education, of course, is one of the most important functions of local government. Absent residence requirements, there can be little doubt that the proper planning and operation of the schools would suffer significantly. The State thus has a substantial interest in imposing bona fide residence requirements to maintain the quality of local public schools.
 
 
 30
 Martinez v. Bynum, supra, 461 U.S. at 328-30, 103 S.Ct. at 1842-43 (emphasis in original, footnotes omitted).
 
 
 31
 The statute at issue in Martinez governed access to tuition-free admission to the public school districts and provided, in relevant part, as follows:
 
 
 32
 "(d) In order for a person under the age of 18 years to establish a residence for the purpose of attending the public-free schools separate and apart from his parent, guardian, or other person having lawful control of him under an order of a court, it must be established that his presence in the school district is not for the primary purpose of attending the public free schools."
 
 
 33
 Id. at 323 n. 2, 103 S.Ct. at 1840 n. 2 (quoting Texas Educ.Code Ann. Sec. 21.031(d) (1982)).
 
 
 34
 In analyzing the facial constitutionality of the statute, the Court first rejected two concerns with the statute in a footnote, stating:
 
 
 35
 We reject Martinez's [a custodian of a minor child named Morales] argument that Sec. 21.031(d) violates the Due Process Clause because it creates an irrebuttable presumption of nonresidence. * * * see Vlandis v. Kline, 412 U.S. 441, 446, 93 S.Ct. 2230, 2233, 37 L.Ed.2d 63 (1973). Morales easily could rebut any "presumption" of nonresidence if he were, in fact, a resident. See infra, [103 S.Ct.] at 1844, and n. 15; * * *.
 
 
 36
 We also find no merit to Martinez's argument that Sec. 21.031(d) constitutes an impermissible burden on children who choose to adopt a nontraditional family-living arrangement. * * * see Moore v. City of East Cleveland, 431 U.S. 494, 506, 97 S.Ct. 1932, 1939, 52 L.Ed.2d 531 (1977) (plurality opinion). Unlike the housing ordinance we invalidated in Moore v. City of East Cleveland, the statute before us imposes residence requirements that are justified by substantial state interests on children who live apart from their parents, Sec. 21.031(d), and on children who live with their parents, Secs. 21.031(b) and (c); * * *.
 
 
 37
 Id. at 330, 103 S.Ct. at 1843-44 n. 10. The Court then determined that the statute was constitutional because it set forth a bona fide residence requirement which was less restrictive than the traditional residence standard. Id. at 332-33, 103 S.Ct. at 1844-45. As interpreted by the Court, the statute allowed both children who satisfied the traditional residence standard, and children whose sole purpose for living in the school district was not that of attending free public school, to attend public school for free.[5]
 
 
 38
 Justice Marshall, in contrast to the majority, read the Texas statute involved in Martinez as establishing a class composed of "children who live apart from their parents or legal guardians for educational purposes." Id. at 344, 103 S.Ct. at 1851 (Marshall, J., dissenting). The statute, as interpreted by Justice Marshall, denied members of that class access to free public education unless they "intend[ed] to remain indefinitely in a particular school district in the State", id., whereas other children would be granted access to school regardless of their intent to remain.
 
 
 39
 We, of course, express no opinion as to whether Justice Marshall's interpretation of the Texas statute was correct and do not rely on his dissenting opinion in this regard. The analysis which followed from his interpretation of the statute, however, is pertinent to this case.
 
 
 40
 Justice Marshall concluded that since the statute subjected a certain class of children to a more rigorous standard for admission to school than other children, it could not be upheld on the basis that it was a uniformly imposed bona fide residence requirement. Instead, he concluded, the classification created by the statute must itself be examined to determine whether it passes constitutional scrutiny. Id. at 343-45, 103 S.Ct. at 1850-51. Support for this proposition was found in Plyler v. Doe, 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982), wherein the Court "observed that while the State is 'as free to apply to undocumented children established criteria for determining residence as [it is] to apply those criteria to any other child who seeks admission,' the State's classification will not escape constitutional scrutiny merely because it 'defin[es] a disfavored group as non-resident.' " Id. 461 U.S. at 344, 103 S.Ct. at 1851 (quoting Plyler v. Doe, supra, 457 U.S. at 227 n. 22, 102 S.Ct. at 2400 n. 22.)
 
 
 41
 Here, the Marshall Public School District has established a class composed of minor children who do not have a parent or legal guardian living in the district. Members of this class are excluded from public education in the Marshall school district even though they live in the district and even though, as in the case of Phillip and Rhonda, they did not move to the district for the primary purpose of attending school in the Marshall school district. Accordingly, we examine the constitutionality of the Marshall Public School District's classification apart from the bona fide residence requirement analysis.
 
 
 42
 1. Equal Protection Clause.
 
 
 43
 First, we examine plaintiffs' contention that the classification involved here violates the equal protection clause. Generally, classifications are upheld in face of equal protection challenges if the classification "rationally furthers a legitimate state purpose." Hooper v. Bernalillo County Assessor, --- U.S. ----, ----, 105 S.Ct. 2862, 2866, 86 L.Ed.2d 487 (1985). Plaintiffs rely primarily upon Plyler v. Doe, supra, for their contention that greater scrutiny must be accorded to the classification at issue.
 
 
 44
 In Plyler, the Court found that a Texas statute which excluded undocumented alien children from free public education was unconstitutional. The Court subjected the statute to an intermediate scrutiny test, stating:
 
 
 45
 more is involved in these cases than the abstract question whether Sec. 21.031 discriminates against a suspect class, or whether education is a fundamental right. Section 21.031 imposes a lifetime hardship on a discrete class of children not accountable for their disabling status. The stigma of illiteracy will mark them for the rest of their lives. By denying these children a basic education, we deny them the ability to live within the structure of our civic institutions, and foreclose any realistic possibility that they will contribute in even the smallest way to the progress of our Nation. In determining the rationality of Sec. 21.031, we may appropriately take into account its costs to the Nation and to the innocent children who are its victims. In light of these countervailing costs, the discrimination contained in Sec. 21.031 can hardly be considered rational unless it furthers some substantial goal of the State.
 
 
 46
 Plyler v. Doe, supra, 457 U.S. at 223-24, 102 S.Ct. at 2398 (emphasis added). Since the Court was unable to find that a substantial state goal was furthered by the statute, an equal protection violation was established. Id. at 230, 102 S.Ct. at 2401.
 
 
 47
 Plaintiffs seek to apply the same analysis employed in Plyler to the Marshall Public School District's policy on the basis that minor children who do not have a parent or legal guardian living in the district are members of a "discrete class of children not accountable for their disabling status." Id. at 223, 102 S.Ct. at 2398. The Marshall Public School District has offered no means of refuting this argument, and we see none.
 
 
 48
 In fact, a footnote in the dissenting opinion in Plyler, and the reasoning contained in a response to that footnote in a concurring opinion in Plyler, convinces us that the intermediate standard of review set forth in Plyler is applicable in this case. The dissent in Plyler contended that the lack of control which undocumented children might have over their undocumented status was irrelevant for purposes of determining the applicable standard of review, since undocumented children
 
 
 49
 "lack control" over their illegal residence in this country in the same sense as lawfully resident children lack control over the school district in which their parents reside. Yet in San Antonio Independent School Dist. v. Rodriguez, 411 U.S. 1 [93 S.Ct. 1278, 36 L.Ed.2d 16] (1973), we declined to review under "heightened scrutiny" a claim that a State discriminated against residents of less wealthy school districts in its provision of educational benefits. There was no suggestion in that case that a child's "lack of responsibility" for his residence in a particular school district had any relevance to the proper standard of review of his claims. The result was that children lawfully here but residing in different counties received different treatment.
 
 
 50
 Id. at 245 n. 5, 102 S.Ct. at 2409 n. 5 (Burger, C.J., dissenting) (emphasis added). Justice Powell responded to this argument as follows:
 
 
 51
 THE CHIEF JUSTICE argues in his dissenting opinion that this heightened standard of review is inconsistent with the Court's decision in San Antonio Independent School District v. Rodriguez, 411 U.S. 1 [93 S.Ct. 1278, 36 L.Ed.2d 16] (1973). But in Rodriguez no group of children was singled out by the State and then penalized because of their parents' status. Rather, funding for education varied across the State because of the tradition of local control. Nor, in that case, was any group of children totally deprived of all education as in these cases.
 
 
 52
 Id. at 239 n. 3, 102 S.Ct. at 2406 n. 3 (Powell, J., concurring) (emphasis added).
 
 
 53
 Here, a group of children has been singled out by the Marshall Public School District to be totally deprived of an education. It is inescapable, in light of Plyler and in light of the interests at stake, that the denial of an education to the class of children involved in this case "can hardly be considered rational unless it furthers some substantial goal of the State." Id. at 224, 102 S.Ct. at 2398.
 
 
 54
 The Marshall Public School District offers three state interests which, it argues, support the classification at issue. First, the school district argues that its parent or legal guardian policy prevents undesirable fluctuations in the student population which would hinder efforts to predict enrollment figures for planning purposes. The proper planning and operation of schools is a substantial state interest which is furthered by bona fide residence requirements. See Martinez v. Bynum, supra, 461 U.S. at 330 & n. 9, 103 S.Ct. at 1843 & n. 9. The school district has not, however, submitted any evidence regarding how the denial of education to children solely because the children do not have a parent or legal guardian living in the district furthers this interest, nor has the school district submitted such evidence regarding the other interests which it offers in support of its policy. See Martinez v. Bynum, supra, 461 U.S. at 348-51, 103 S.Ct. at 1853-54 (Marshall, J., dissenting). In view of the fact that the school district may appropriately require children to satisfy traditional residency requirements, see Martinez v. Bynum, supra, may limit intrastate student transfers by merely withholding its consent to the transfer, see Delta Special School District No. 5 v. McGehee Special School District No. 17, 280 Ark. 489, 659 S.W.2d 508, 509 (1983) (applying ARK.STAT.ANN. Sec. 80-1528 (Supp.1983)), and may refuse to admit children who move into the district "for the primary purpose of attending school in a district other than where their parents reside", Spriggs v. Altheimer, Arkansas School District No. 22, supra, 385 F.2d at 259, the school district's policy of requiring a parent or legal guardian to live in the district can hardly be assumed to substantially further its interest in preventing undesirable population fluctuations.
 
 
 55
 Second, the Marshall school district argues that its parent or legal guardian policy preserves its scarce resources for the education of the children of those who support education with their taxes. While there is a "substantial state interest in assuring that [a state's public education] services provided for its residents are enjoyed only by residents", Martinez v. Bynum, supra, 461 U.S. at 328, 103 S.Ct. at 1842 (emphasis added), there is obviously no such interest in limiting public education to the children of those who support public education as taxpayers. See, e.g., Hooper v. Bernalillo County Accessor, supra, --- U.S. at ---- & n. 13, 105 S.Ct. at 2868 & n. 13 (rewarding citizens for past contributions not a legitimate state purpose); Shapiro v. Thompson, 394 U.S. 618, 632-33, 89 S.Ct. 1322, 1330-31, 22 L.Ed.2d 600 (1969) (same). And, "[o]f course, a concern for the preservation of resources standing alone can hardly justify the classification used in allocating those resources." Plyler v. Doe, supra, 457 U.S. at 227, 102 S.Ct. at 2400 (citing Graham v. Richardson, 403 U.S. 365, 374-75, 91 S.Ct. 1848, 1853-54, 29 L.Ed.2d 534 (1971)).
 
 
 56
 Finally, the Marshall school district argues that its parent or legal guardian policy "provides [the school district with] an individual that a school official may deal with effectively and authoritatively in matters of punishment, educational progress and medical needs." Harris v. Hall, 572 F.Supp. 1054, 1058 (E.D.N.C.1983). The school district's interest in having a responsible person with whom it can deal in matters concerning each child's education may be substantial. But see Street v. Cobb County School District, 520 F.Supp. 1170, 1173 (N.D.Ga.1981) (interest did not support parent or legal guardian requirement as applied to unmarried emancipated minor). Restricting this person to either a parent or legal guardian living in the district, however, is overly restrictive in relation to the interests which are sought to be furthered.
 
 
 57
 Arkansas law provides that "[e]very parent, guardian, or other person residing within the State of Arkansas and having in custody or charge any child or children between the ages of seven and fifteen , (both inclusive)" is required to send the child to a school or be subject to criminal penalties. ARK.STAT.ANN. Sec. 80-1502 (1980 Repl.). Clearly, if persons having "custody or charge" of a child may be held criminally responsible for sending the child to school, such persons should also be deemed to have sufficient authority over the child to satisfy the school's interest in having a person it can deal with in matters concerning the child's education. Yet the Marshall school district's policy does not permit minor children, such as Phillip or Rhonda, to attend school even though they are living with adults, such as the Hortons and Williams, who have custody or charge over them.
 
 
 58
 In short, the Marshall Public School District has failed to show that its policy of denying admission to minor children solely because the children do not have a parent or legal guardian living within the district's boundaries furthers a substantial state interest. Accordingly, we find that the policy violates the equal protection clause.
 
 
 59
 2. Due Process Clause.
 
 
 60
 The plaintiffs also contend that the Marshall Public School District policy violates the due process clause by creating an irrebuttable presumption that a minor child who does not have a parent or legal guardian living in the Marshall school district is not domiciled in the district for school attendance purposes. Because the Marshall school district's policy is based on its interpretation of the term "domicile" as it appears in Sec. 80-1501 (Supp.1983), and because plaintiffs' contention is that they can be "domiciled" in the Marshall school district but are conclusively presumed to be unable to do so unless their parent or legal guardian is living in the school district,
 
 
 61
 this case is squarely within Vlandis [v. Kline, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973) ] as limited by [Weinberger v.] Salfi [, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) ] to those situations in which a State "purport[s] to be concerned with [domicile, but] at the same time den[ies] to one seeking to meet its test of [domicile] the opportunity to show factors clearly bearing on that issue." Weinberger v. Salfi, 422 U.S., at 771 [95 S.Ct., at 2470].
 
 
 62
 Elkins v. Moreno, 435 U.S. 647, 660, 98 S.Ct. 1338, 1346, 55 L.Ed.2d 614 (1978). Since the Supreme Court in Elkins failed to overrule Vlandis, we must apply Vlandis to this case.
 
 
 63
 In Vlandis, the Court was faced with an irrebuttable statutory presumption that a student who had a legal address outside the State of Connecticut at the time of his application for admission to a state university (or at some point during the preceding year) was a nonresident for purposes of in-state tuition rates. This presumption remained with the student for as long as he was a student. The Court held the presumption unconstitutional because first, it was not universally true that students who applied from outside the state were not, or would not become, bona fide residents of the State, and second, the State had reasonable alternative means of determining which students were actually residents. Vlandis v. Kline, supra, 412 U.S. at 452, 93 S.Ct. at 2236.
 
 
 64
 We have determined that the Marshall school district's policy, adopted pursuant to its interpretation of Sec. 80-1501 (Supp.1983), of denying an education to minor children who do not have a parent or legal guardian living in a particular district violates the equal protection clause. Ante at 1329-32. Thus, Arkansas statutory law cannot constitutionally limit a child's domicile, for school attendance purposes, to the domicile of the child's parent or legal guardian. Further, in view of the district court's interpretation of the term "domicile" in the school attendance context to mean "residence", there is no authority for so limiting a child's domicile under Arkansas case law. See Spriggs v. Altheimer, Arkansas School District No. 22, supra. Accordingly, it is not "universally true" that children who do not have a parent or legal guardian living in the Marshall school district are not domiciled in the district (i.e. residing in the district with a present intent to remain). Since, as in Vlandis, reasonable alternative means of determining the child's domicile exist, the Marshall school district policy creates an unconstitutional irrebuttable presumption.
 
 
 65
 3. Nontraditional Family-Living Arrangement.
 
 
 66
 Plaintiffs further contend that the Marshall Public School District's policy unconstitutionally interferes with their right to adopt a nontraditional family-living arrangement. See Moore v. City of East Cleveland, 431 U.S. 494, 506, 97 S.Ct. 1932, 1939, 52 L.Ed.2d 531 (1977). Plaintiffs reading of the school district's policy in this regard is too broad, however, in that the district has not required minor children to actually live with a parent or legal guardian. Rather, the district has only required that a parent or legal guardian live in the Marshall school district boundaries. Thus, there is no impermissible burden on plaintiffs' right to adopt a nontraditional family-living arrangement.
 
 
 67
 4. Privileges and Immunities Clause.
 
 
 68
 Plaintiffs finally assert that the Marshall school district's policy violates the privileges and immunities clause because it penalizes those who enter Arkansas seeking public education services. See Doe v. Bolton, 410 U.S. 179, 200, 93 S.Ct. 739, 751, 35 L.Ed.2d 201 (1973) (medical services). This argument has little to do with the parent or legal guardian requirement. Instead, plaintiffs are essentially arguing that limiting education to domicilaries of a school district (i.e. children residing in the school district with a present intent to remain) violates the privileges and immunities clause. In light of the decision in Martinez that such restrictions are generally constitutional, plaintiffs' argument is unfounded. Martinez v. Bynum, supra, 461 U.S. at 328-30, 103 S.Ct. at 1842-43.
 
 
 69
 C. Procedural Due Process.
 
 
 70
 In response to the plaintiffs' contention that Phillip and Rhonda were deprived of procedural due process when they were excluded from school, the district court first determined that the right to attend public school is a protected interest, stating:
 
 
 71
 In Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), the Supreme Court held that a state must recognize as a property interest a student's legitimate entitlement to a public education and that such a property interest may not be terminated for misconduct without some minimum due process protection. Of course, in the present case the deprivation of the right to attend public school was not based upon any misconduct upon Phillip's or Rhonda's part, but rather it was based upon their ineligibility under state law to attend the Marshall Public Schools. However, because "education is perhaps the most important function of state and local governments," Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), we believe a student's right to public education is a protected property interest in either case.
 
 
 72
 Horton v. Marshall Public Schools, supra, 589 F.Supp. at 103 (footnote omitted). The court then addressed the issue of whether adequate procedural protections were accorded this interest, stating:
 
 
 73
 In regard to the issue of what process was due, a student facing interference with the protected interest in public education "must be given some kind of notice and afforded some kind of hearing ... the timing and content of the notice and the nature of the hearing will depend on appropriate accommodation of the competing interests involved." Goss v. Lopez, supra, 419 U.S. at 579, 95 S.Ct. at 739. We cannot find in either Rhonda's or Phillip's case that the minimum requirements of due process were not met. It appears that under the circumstances adequate notice of the potential eligibility problems was given and both parties were given adequate opportunity to respond and to correct any mistakes of fact. This is not to say, however, that the school officials involved did everything that they could have done to aid the students more completely, but that is not what the Due Process Clause requires. We find only that the minimum requirements were complied with.
 
 
 74
 Id. On appeal, plaintiffs argue that the court's rejection of their procedural due process claim was erroneous, and that they were entitled to a hearing to determine whether Phillip's mother or Rhonda's parents were actually domiciled in the Marshall school district.
 
 
 75
 We affirm the district court's finding that the procedural due process rights of Phillip and Rhonda were not violated. Even assuming that Phillip and Rhonda had a property interest subject to procedural due process protection, we are unable to find that a due process hearing was required in this case.
 
 
 76
 The Marshall Public School District's policy of excluding minor children from school unless they had a parent or legal guardian living in the district involved patently objective facts which are not the type which would foreseeably be controverted. In fact, neither Phillip nor Rhonda has ever contested the fact that they did not have a parent or legal guardian living in the district. Thus, the questions involved in the Marshall school district's decision to exclude Phillip and Rhonda from school are not like the suspension from public school for misconduct involved in Goss v. Lopez, 419 U.S. 565, 580, 95 S.Ct. 729, 739, 42 L.Ed.2d 725 (1975), where "the controlling facts and the nature of the conduct under challenge are often disputed."
 
 
 77
 As the Court recognized in Goss, "the interpretation and application of the Due Process Clause are intensely practical matters." Id. at 578, 95 S.Ct. at 738. It would be impractical to require school districts to grant due process hearings in cases involving objective and typically indisputable facts such as those involved in this case. Absent some indication that there is a dispute regarding such facts, it is sufficient that the school district give the student notice of the reasons for which he will be excluded from school and an opportunity to respond to and contest those reasons if the student desires. Since the Marshall school district afforded Phillip and Rhonda these minimal procedural protections, we affirm the district court's finding that Phillip's and Rhonda's procedural due process rights were not violated.
 
 CONCLUSION
 
 78
 Plaintiffs' claim that Sec. 80-1501 (Supp.1983) is unconstitutional is moot. We also do not consider the constitutionality of Sec. 80-1501 (1984 Interim Supp.), as the issue is not properly before us.
 
 
 79
 We find that the Marshall Public School District's policy of excluding minor children from school unless the child has a parent or legal guardian living in the district violates the equal protection and due process clauses. Accordingly, we remand so that the district court may enter a declaratory judgment to that effect. We also remand so that the district court may determine whether Phillip and Rhonda were domiciled in the district (i.e. residents of the district with a present intent to remain) at the time of their exclusion from school. If so, Phillip and Rhonda were injured by the Marshall school district's unconstitutional policy and are entitled to damages. Finally, we affirm the district court's finding that Phillip's and Rhonda's procedural due process rights were not violated.
 
 ON REHEARING EN BANC
 
 80
 The petition for rehearing en banc is denied.
 
 
 81
 ARNOLD, Circuit Judge, with whom FAGG, BOWMAN, and WOLLMAN, Circuit Judges, join, dissenting.
 
 
 82
 I would grant rehearing en banc. In my view, a rational-basis test should be used to decide the federal constitutionality of the residence policy in question. Under that test, I think the policy should be upheld.
 
 
 
 [1]
 When Phillip was readmitted to school, he was informed that he would receive failing grades in each of his courses due to the number of class periods he had missed while he was excluded from school. To remedy this situation, Phillip sought a temporary restraining order or a preliminary injunction requiring the Marshall Public School District to reinstate him as a student in good standing. A hearing on this matter was held on April 29, 1983. No ruling on Phillip's requested injunctive relief was ever issued, however, because Phillip and the school district reached an agreement as to Phillip's standing in school prior to the hearing
 
 
 [2]
 Rhonda requested injunctive relief which differed from that requested by Phillip, see ante at n. 1, in that she sought an injunction requiring the Marshall Public School District to permit her to enroll in their school system. The merits of Rhonda's motion for a temporary restraining order or a preliminary injunction to this effect was presented at a hearing on April 29, 1983. The court, however, never issued a ruling on this motion. At trial, the testimony revealed that it had become safe for Rhonda to live with her father and that she was living with her parents in Watson, Arkansas. In light of this fact, it is understandable that on appeal, plaintiffs do not argue that Rhonda should now be granted her requested injunctive relief
 
 
 [3]
 This concern arose from the following statement by the Court in Martinez v. Bynum, 461 U.S. 321, 103 S.Ct. 1838, 75 L.Ed.2d 879 (1983):
 In Vlandis v. Kline, [412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973) ] supra, we approved a more rigorous domicile test as a "reasonable standard for determining the residential status of a student." 412 U.S., at 454, 93 S.Ct., at 2237. That standard was described as follows: " ' * * * the domicile of an individual is his true, fixed and permanent home and place of habitation. It is the place to which, whenever he is absent, he has the intention of returning.' " Ibid. * * * This standard could not be applied to school-age children in the same way that it was applied to college students.
 Id. at 331, 103 S.Ct. at 1844 (emphasis added). The emphasized sentence seems to imply that the Court would find a domicile standard invalid in the context of public school attendance. But see Harris v. Hall, 572 F.Supp. 1054, 1057 (E.D.N.C.1983) ("Without further guidance, this statement [from Martinez ] can only be interpreted as meaning that durational periods * * * cannot bar school-age children, whose parents or guardians have created new domiciles, from receiving a free public school education"; domicile standard upheld in elementary school context).
 
 
 [4]
 In Spriggs, we determined that minor children who were living with their grandfather could be residents of the school district which they were living in, for purposes of an even earlier version of Sec. 80-1501, even though their mother did not live in that particular school district. We concluded that a minor child's residence is not "necessarily that of his parent or legal guardian." Spriggs v. Altheimer, Arkansas School Dist. No. 22, 385 F.2d 254, 258 (8th Cir.1967). Additionally, we cited numerous cases illustrating the principle that "school tuitional laws governing the residency of children should be interpreted liberally to insure a free education for the greatest number of children." Id. at 259
 
 
 [5]
 This broad interpretation of the statute was consistent with the finding by the district court that " 'children living within the school districts with someone other than their parents or legal guardians will be admitted to school if any reason exists for such situation other than that of attending school only.' " Martinez v. Bynum, 461 U.S. 321, 322-26, 103 S.Ct. 1838, 1840-41 (1983) (emphasis in original)