West Chester Area School District, Petitioner *v.* Commonwealth of Pennsylvania, Secretary of Education of Pennsylvania and the Department of Education of Pennsylvania, Respondents.

Submitted on briefs, December 7, 1978, to Judges CRUMLISH, JR., MENCER and CRAIG, sitting as a panel of three.

*Ross A. Unruh*, with him *Lynn S. Palenscar*, and *MacElree, Harvey, Gallagher & Kean, Ltd.*, for appellant.

*John A. Alzamora*, Assistant Attorney General, for appellees.

*James E. McErlane*, with him *Lamb, Windle & McErlane*, for intervenors.

OPINION BY JUDGE CRUMLISH, JR., May 22, 1979:

This appeal is one of many we are called upon to consider where there is a conflict of opinion of the authorities and parents of emotionally disturbed school age children.

The Secretary of Education affirmed a hearing officer's determination that a day school program was the appropriate educational placement for a socially and emotionally disturbed school-aged child who lived in the School District (District). The District appeals. We affirm the Secretary.

Is the Secretary's decision recommending placement in a day special education program (in either a public or private school) supported by substantial evidence?

The Secretary's dilemma, as might be expected, resulted from the conflicting opinions of the child's parents and the District. The parents preferred

placement in a day school while placement in a residential treatment facility was recommended by the District. All parties agree the child needs some kind of special education. In December, 1966, he began receiving special instructions at school and has since been provided extensive treatment in a number of school settings and treatment facilities. However, the present controversy arises when in November, 1975, the District recommended re-admission to a residential treatment facility intertwined with interim home instruction. It believed adequate facilities for the necessary care and treatment could best be provided by a residential treatment facility. The parents, as was their right, rejected this proposal and requested a due process hearing.[1] At the conclusion of the examiner's hearing where testimony was submitted in support of both contentions, including that of psychiatrists who had examined the child and of several school administrators, he concluded that a day program which would provide a full range of educational and treatment services is the most desirable one. The Secretary, on December 9, 1976, issued an opinion and final order affirming the hearing officer's recommendation but adding to it the required outside psychotherapy.

Our duty in reviewing the Secretary's adjudication is to affirm his decision unless a violation of constitutional rights has occurred, an error of law has been committed, or the findings of fact are not supported by substantial evidence. 2 Pa. C.S. §704.

A brief recitation of the Secretary's reasoning follows: (1) the child had already obtained the maxi-

---

[1] If the school district and the child's parents disagree as to whether the district has properly classified their child's handicapping condition and/or whether the district's proposed educational program and placement for the child is appropriate, the parent may then request a "due process" hearing, 22 Pa. Code §13.31(b).

mum benefits available in a residential treatment program but an unfavorable impression resulted; (2) prior unsuccessful day school experience was not indicative of its potential benefits because of deficient implementation; and (3) the Secretary judged that the District's recommendation subordinated its positive benefits to its inadequate financial position.

Handicapped school-aged persons are entitled to an appropriate educational and training program[2] and the primary responsibility for the program is with the District residence of the child. 22 Pa. Code §13.11, §171.13. The residential treatment facility recommended by the District appears to meet its basic obligation to provide some form of special education. However, before a District can recommend placement outside the District, it must be evident that because of the nature or incidence of the student's handicapping condition, it is unable to operate an appropriate education program. 22 Pa. Code §13.11(b), §171.13. Should the nature and severity of a student's handicap be such that outside treatment facilities are necessary, the District must comply with the priority order of placement, 22 Pa. Code at §13.11(d) and §171.16 (c), in determining the educational locus:

1. A regular class in a regular school with supporting services.

2. A school district special educational program in a regular school, including homebound instruction.

3. A school district special education program in a special facility.

---

[2] An "appropriate program" is defined as: "A program of education or training for exceptional school-aged persons which meets their individual needs as agreed to by a parent, school district or intermediate unit personnel; or as ordered by a hearing officer; or upon appeal as ordered by the Secretary of Education." 22 Pa. Code §13.1.

4. An intermediate unit program in a regular school.

5. An intermediate unit program in a special facility.

6. An approved private school program.

7. A state school program.

8. An approved out-of-state program.

9. An intermediate unit program of instruction in the home.

These priority specifications represent the possible educational placements in descending order of desirability. Accordingly, the student may not be assigned to an approved private or state school program (No. 6 or 7) if his educational needs can be met in a district's regular special education which includes homebound instruction (No. 2).[3]

The record satisfies us that the Secretary's opinion, in which he adopted the hearing officer's recommendation of a day program of special education for the child, is supported by substantial evidence. It is also consistent with the Department of Education's regulations considered priority order of placement. There was fear for the boy's physical welfare at Eastern State School where his father testified the boy had been assaulted and physically abused. Homosexual activity, confirmed by the chaplain, was widespread at the institution. Although proof of the existence of these abuses is lacking, the child and his parents, having observed these kinds of abuses, feared the child's well-being.

------
[3] The parents' deep commitment and devotion to their only child convinces us that necessary family counseling will be provided. Removing the child from his parents would not only deprive them of an opportunity to contribute to their child's development, but more importantly would be inconsistent with the Department's placement priority regulations.

In short, we hold that the Secretary's order recommending placement in a day school to be supplemented by adequate outside psychotherapy and requisite family involvement is supported by substantial evidence.

Accordingly, we

### Order

And Now, this 22nd day of May, 1979, the order of the Secretary of Education dated December 9, 1976, is hereby affirmed.