Russell Pires, a minor, by his parents, Edmond and Jane Pires, Petitioners *v.* Commonwealth of Pennsylvania, Department of Education, Respondent.

Argued November 17, 1982, before President Judge CRUMLISH, JR. and Judges MACPHAIL and DOYLE, sitting as a panel of three.

128

*Edward T. Titterton,* with him *Sylvia Meek,* for petitioners.

*Ernest N. Helling,* for respondent.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., October 27, 1983:

Edmond and Jane Pires appeal on behalf of their son, Russell, from the Secretary of Education's order denying approval of Russell's special education program and placement at Don Guanella, a private residential school located in the Delaware County Intermediate Unit. The Secretary also denied payment for Russell's weekend transportation costs to and from the facility. We reverse and remand.

Russell is an exceptional child[1] residing with his parents in the Methacton School District, which is located in the Montgomery County Intermediate Unit.

---

[1] 22 Pa. Code §13.1 defines "exceptional persons" as:

Persons of school-age who deviate from the average in physical, mental, emotional, or social characteristics to such an extent that they require special educational programs, facilities, or services. . . .

In January 1979, officials from the School District and the Intermediate Unit informed the Pires that neither entity would be able to provide an appropriate secondary school program[2] for Russell's 1979-1980 school year.[3] The Pires were then provided with a list of five "approved private schools" (APS)[4] for them to investigate as possible placement alternatives for Russell. After investigating these facilities, the Pires concluded that they were unsuited to Russell's needs.

By the end of July 1979, the School District had neither conducted an updated educational evaluation[5] of Russell, nor issued a Notice of Recommended As-

---

[2] 22 Pa. Code §13.1 defines an "appropriate program" as:

A program of education or training for exceptional school-aged persons which meets their individual needs as agreed to by a parent, school district, or intermediate unit personnel; or as ordered by a hearing officer; or upon appeal as ordered by the Secretary of Education.

[3] Prior to this school year, Russell had been enrolled in appropriate elementary educable mentally retarded and trainable mentally retarded classes with both the Methacton School District and the Montgomery County Intermediate Unit.

[4] Designation as an "approved private school" is merely a general approval for the receipt of state tuition reimbursement for the speical education of handicapped children, 22 Pa. Code §171-11, and does not indicate that such a school offers an educational program appropriate to the needs of a particular child.

[5] Section 341.13 of the Department of Education's regulation, 22 Pa. Code §341.13, provides:

(a) *General rule.* An evaluation must be conducted in accordance with this section prior to the assignment of any person to a special education program or service or *prior to the denial of assignment* if the parent requests assignment.
. . .

(b) *Individualized Education Program.* [IEP] An evaluation requires the analysis and investigation necessary to develop an Individualized Education Program appropriate for the person as required by §341.15 of this title (relating to Individualized Education Program). *There shall be no change in educational status until the Individualized Education Program has been developed.* (Emphasis added.)

signment (NORA).[6] With the start of the 1979-1980 school year just a month away, the Pires investigated a program at Don Guanella, a private school located in the Delaware County Intermediate Unit. The Pires, being most impressed with the facility and the educational program, enrolled Russell in a Delaware County Intermediate Unit-operated class held at Don Guanella.

The Pires then requested transportation cost reimbursements[7] from the Methacton School District.

---

Section 341.15 provides:

The Individualized Education Program for each person assigned to special education programs or services shall include:

(1) a statement of the present level of educational performance of the person;

(2) a statement of annual goals which describes the expected behaviors to be achieved through the implementation of the Individualized Education Program of the person;

(3) a statement of short-term instructional objectives;

(4) a statement of specific educational services to be provided to the child, including a description of all special education and related services required to meet the unique needs of the child, any special instructional media and materials to be provided, and the type of physical education program in which the child will participate;

(5) a description of the extent to which the child will be able to participate in regular education programs;

(6) the projected date for initiation and the anticipated duration of services; and

(7) appropriate objective criteria, evaluation procedures, and schedules for determining, on at least an annual basis, whether the instructional objectives are being achieved.

[6] In May 1979, Russell had been accepted into the program at Wordsworth Academy. The School District did not schedule an IEP Planning Conference with the parents and a representative from Wordsworth so that an official Notice of Recommended Assignment could have been developed and presented to the Pires.

[7] Since Russell was a residential student at Don Guanella, only weekend and holiday transportation costs were requested.

The School District denied the request, contending that the need for transportation arose not out of Russell's *education* but from his residential *placement* at Don Guanella, a placement initiated by the parents without the School District's approval.

.The Pires then requested a due process hearing but, at a pre-hearing conference, agreed to have Russell reevaluated by the School District. The evaluation process ran through the summer of 1980.[8] On September 2, 1980, the School District issued a NORA, requiring "interim placement" for Russell in a Perkiomen Valley School District secondary level class for educable mentally retarded children while placement in an approved private school was pursued. The parents rejected this NORA, kept Russell enrolled at Don Guanella, and requested a due process hearing.

Four hearings were held in November, 1980. The hearing officer, in her January 6, 1981 report, recommended public school placement in a combined program for trainable and educable mentally retarded children to meet Russell's individual needs. The Pires filed exceptions to several of the hearing officer's findings and requested that the Secretary approve Russell's special education program and placement at Don Guanella. The Pires again requested transportation costs.

The Secretary, in rejecting the hearing officer's recommendation to place Russell in a combined program for trainable and educable children, concluded that Russell is "a low functioning educable retarded child who requires a highly structured special education program." The Secretary, however, concluded

---

[8] Evaluations were conducted on January 2 and April 12, 1980. On June 11, 1980, the Pires and the School District staff met, at which time the District proposed three public school options for Russell's 1980-1981 school year. On August 18 and September 2, 1980, IEP planning conferences were held.

132

that he was without the authority to "approve or recommend the Delaware County IU program [at Don Guanella] as the appropriate program by which the district (Methacton) may satisfy its legal responsibility to Russell" since the parents, and not the School District, placed Russell in the program. The Secretary held that Section 1306 of the Public School Code[9] governed Russell's placement at Don Guanella.

Section 1306 provides:

§13-1306. Non-resident inmates of children's institutions

(a) The board of school directors of any school district in which there is located any orphan asylum, home for the friendless, children's home, or other institution for the care or training of orphans or other children, shall permit any children who are inmates of such homes, but not legal residents in such district, to attend the public schools in said district. . . .

The Secretary's opinion stated:

Don Guanella would clearly fall under the purview of this section [13-1306] which, rather broadly, covers "institutions for the care or training of orphans or other children." Furthermore, Russell is an "inmate" of Don Guanella and is not a legal resident of the district in which Don Guanella is located. Accordingly, under the present circumstances, *the provision of Russell's special education is not the responsibility of Methacton;* but rather, it is the responsibility of the district in which Don Guanella is located. The special education programs on the grounds of Don Guanella, are apparently being operated by the Delaware Coun-

---

[9] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §13-1306.

ty IU for the district in which Don Guanella is located. (Emphasis added.)

The Secretary also found that the School District was not responsible for Russell's transportation cost.

We must affirm the order of the Secretary unless a violation of constitutional rights has occurred, an error of law has been committed, or findings of fact are not supported by substantial evidence. *Murphy v. Commonwealth,* Pa. Commonwealth Ct. , 460 A.2d 398 (1983).

Handicapped school-aged persons are entitled to an appropriate educational and training program, with the primary responsibility for such a program being with the school district residence of the child. *West Chester Area School District v. Commonwealth,* 43 Pa. Commonwealth Ct. 14, 401 A.2d 610 (1979). Where the school district is unable to provide an appropriate program in an effective and efficient manner, the district shall use the services of the Intermediate Unit. 22 Pa. Code §13.11(b); 22 Pa. Code §341.22(a). Additionally, Russell is considered a resident of the school district in which his parents reside. 24 P.S. §13-1302. Hence, the legal responsibility for Russell's educational and training program falls initially on the Methacton School District and secondarily on the Montgomery County Intermediate Unit.

Neither the School District nor the Intermediate Unit fulfilled its responsibility in providing an appropriate program for Russell. In January 1979, both the School District and the Intermediate Unit informed the parents of their inability to provide a secondary school program for Russell's 1979-80 school year, and merely provided them with a list of "approved private schools,"[10] for the Pires' evaluation as

---

[10] *See, supra,* n. 4.

to suitability. And it was not until twenty-one months later, in September 1980, that the School District made an official recommendation of an appropriate educational program and was accordingly able to make any determination of whether the "approved private schools" provided suitable programs for Russell. Not surprisingly, the Secretary found that none of the listed schools provided programs suited to Russell's needs.

While we recognize the complexities inherent in properly evaluating exceptional children in order to develop an appropriate educational and training program, under the circumstances of this case, a twenty-one month period of time amounts to an abject failure by the school district to meet its legal responsibility to provide an appropriate program of education and training for Russell. Thus, it is both understandable and commendable that the Pires took action, lest precious years of educational opportunity be lost to their son.

Furthermore, we disagree with the Secretary's opinion that Section 13-1306 of the Code limits his authority to recommend Don Guanella as an appropriate program. Section 1306 protects the rights of orphans and other institutionalized children in this Commonwealth to a public school education. It does not, as the Secretary has held, relieve the school district of a child's legal residence from the responsibility of providing an appropriate educational and training program for that child.

The Secretary's order provides that, if the parents wish Russell's special education to be provided by the Methacton School District and the Montgomery County IU, such programming is to be provided in a public school for low functioning educable retarded children or at an APS; but, if the parents wish Russell to con-

tinue at Don Guanella and to be educated by the Delaware County IU, they should contact that IU for appropriate programming for Russell. The Secretary has erred to the extent that this order intimates that the School District and the Montgomery County IU are precluded from considering the Delaware County IU-operated program at Don Guanella as a possible program alternative. The Department Regulations specifically provide that a cooperative agreement may be developed among districts and intermediate units in order to meet the needs of individual school-aged exceptional persons. 22 Pa. Code §341.22(a)(3).

It therefore was and continues to be the responsibility of the Methacton School District to provide an appropriate educational and training program for Russell with consideration given to the program Russell has been attending at Don Guanella.

The Secretary also denied reimbursement from the School District and Montgomery County IU for Russell's transportation expense to Don Guanella. An exceptional child, enrolled in a special class approved by the Department or in a regular class in which approved educational provisions are made for the child, is entitled to free transportation by the school district or the intermediate unit. 24 P.S. §13-1374. It is clear that the parents are not responsible for such costs. Thus, as to the transportation costs already incurred by the parents, a determination must be made whether Russell was enrolled "in a regular class in which approved educational provisions [were] made for him" as provided by Section 13-1374 of the Code before the parents can recoup those costs.

Accordingly, we vacate the Secretary's order and remand for further proceedings not inconsistent with this opinion.

Reversed and remanded.

136

The order of the Secretary of Education, dated June 2, 1981, concerning the Special Education Opinion No. 173 is hereby reversed and remanded for further proceedings not inconsistent with this opinion. Said proceedings are to be completed and a decision rendered within sixty days from the date of this order. Jurisdiction with regard to the merits is relinquished.