**Daniel CATLIN and Dundeen Catlin, individually and as parents and natural guardians of Dunbar Elliot, a/k/a "Dell" Catlin, a handicapped child, Plaintiffs,**

**v.**

**Gordon M. AMBACH, Commissioner of Education of the State of New York, John F. Holdorf, Superintendent of Schools of the Edmeston Central School District, and the Board of Education of the Edmeston Central School District, Defendants.**

No. 86–CV–222.

United States District Court,
N.D. New York.

Sept. 4, 1986.

---

Anderson, Banks, Moore, Curran & Hollis (Lawrence Thomas, James P. Drohan, of counsel), Mount Kisko, N.Y., for plaintiffs.

Robert Abrams, Atty. Gen. of N.Y. (Lawrence Doolittle, Asst. Atty. Gen., of counsel), Albany, N.Y., for defendant Gordon M. Ambach.

Hogan & Sarzynski (Edward Sarzynski, of counsel), Binghamton, N.Y., for defendants John F. Holdorf and the Bd. of Educ. of the Edmeston School Dist.

## MEMORANDUM–DECISION AND ORDER

MUNSON, Chief Judge.

Plaintiff, Dunbar Elliot ("Dell") Catlin, is a 13 year old child who was born in New York City on April 22, 1973. Shortly after Dell was born, his parents Daniel and Dundeen Catlin learned that Dell had been born with Down's Syndrome. After several consultations, the Catlins decided to place Dell in a family home with Samuel and Elizabeth Conde ("the Condes") in Edmeston, New York. Dell went to Edmeston directly from the hospital and has lived there continuously since that time. He has never resided with his natural parents and has never even visited their home.

The Catlins pay for the cost of Dell's care in Edmeston and no part of those costs is paid by any social service agency. It is not controverted that the Catlins have always intended that Dell reside with the Condes. The center of Dell's civic, social, religious and family life is in Edmeston, New York. The Condes' is the only home Dell has ever known and the people with whom he resides are his "family." Dell refers to the Condes as "Mama" and "Dad" and has longstanding, extended family relationships with two of the Condes' natural children who reside in the area.

Dell shares a room with another child, one year younger than he, who, like Dell, has lived in Edmeston since shortly after his birth. The relationship between Dell and his roommate is brotherly; they attend school together and have become virtually inseparable over the years. Both the Catlins and the Condes believe that it would be extremely harmful for Dell to leave Edmeston and the setting the Condes have provided him.

The Condes are completely responsible for day-to-day decisions regarding Dell's care and supervision. Dell goes with the Condes to the doctor, dentist, barber, etc. He is part of the Edmeston community and knows the neighbors, doctor, dentist, postman, barber, etc. Dell is friendly with his schoolmates and teachers and has attended

school in the same building and with the same classmates ever since he reached school age.

Selection of schools was not a factor in choosing to place Dell in Edmeston with the Condes. Since 1978, when he came of school age, Dell has attended the BOCES-Mt. Vision School in Edmeston, based upon the recommendation of the Edmeston School District Committee of the Handicapped. The placement has been reviewed each year and has been reaffirmed on each of those occasions. The Catlins never attended any of the meetings related to Dell's placement; the school district has dealt solely with the Condes on all matters related to Dell and his education.

Up to mid–1985, the Catlins resided in New York State, within the Bedford Central School District. From the time the child started attending school through 1985, the Bedford Central School District assumed financial responsibility for his tuition and paid that tuition to the Edmeston Central School District.

In the summer of 1985 the Catlins moved from their home in Bedford to the State of Massachusetts. The Bedford Central School District advised the Nantucket Public School System that "now that the family has moved to Nantucket, we are no longer responsible for tuition and the burden of Dunbar's education falls on your school district." Letter by Dr. Melvin S. Schwager, Director of Special Services, Bedford Central School District, October 4, 1985, Exhibit No. 21, Answer of Defendant Holdorf and Board of Education. The Bedford Central School District also informed the Edmeston Central School District that Bedford would no longer pay Dell's tuition.

The Edmeston Board of Education notified Dell's parents that he could no longer attend the public schools in that district unless the Catlins or their new district of residence assumed financial responsibility for Dell's education. The school district took the position that Dell was not a resident of the Edmeston School District for educational purposes. The Catlins appealed the Board's decision to the Commissioner of Education of the State of New York. In a decision dated January 14, 1986, the Commissioner affirmed the decision of the Edmeston School District, based on his conclusion that Dell was not a resident of the Edmeston School District because his natural parents resided elsewhere, and because they exercised parental control and were financially responsible for the child.

Massachusetts officials have informally indicated that that state would not be willing to pay the tuition in question. Plaintiffs did not pursue this recourse any further.

On February 27, 1986, the Catlins filed their complaint in this court, alleging that the New York residency statute, as interpreted by the Commissioner and enforced by the Board is constitutionally infirm in that it violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment as well as the Privileges and Immunities Clause. Damages are sought under 42 U.S.C. § 1983, the Education for All Handicapped Children (EHA), 20 U.S.C. §§ 1400 et seq., and the Rehabilitation Act of 1973, 29 U.S.C. 794.

The Board moved for judgment on the pleadings pursuant to Rule 12(c), Fed.R. Civ.Pro., and for summary judgment under Rule 56. At plaintiffs' request, the court scheduled a factual hearing on the question of Dell's residence on July 1, 1986. Daniel Catlin and Elizabeth Conde testified on behalf of plaintiffs. The defendants presented no witnesses. At the close of the hearing, plaintiffs cross-moved for summary judgment. The Commissioner also moved for summary judgment.

Dell's schooling has not been interrupted at any time during these proceedings.

## DISCUSSION

Before reaching the merits of this case the court must address two jurisdictional issues raised by the defendants. Based on *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), both defendants claim this action is based on the EHA, 20 U.S.C. § 1400 *et seq.* and that EHA is

the exclusive remedy for claims on matters involving a handicapped student. Indeed, in *Robinson* the Court stated that "Congress intended the EHA to be the exclusive avenue through which a plaintiff may assert an equal protection claim to a publicly financed special education." *Id.* at 1009, 104 S.Ct. at 3460. Plaintiff claims that the only issue is the State's determination of Dell's residence, and that EHA is only affected, if at all, indirectly, as a result of the Board's residence determination. In that sense, according to plaintiffs, this is not an EHA claim but a "residence" claim.

Defendants Holdorf and Edmeston Central School District refer to *David D. v. Dartmouth School Committee,* 775 F.2d 411 (1st Cir.1985) for the proposition that the EHA preempts any equal protection claim when a handicapped student is involved. In that case, the Circuit Court described the statutory framework of EHA:

> The Education for All Handicapped Children Act is designed to assist states and local agencies in their efforts to educate the physically and mentally disabled children. Federal funds are provided to contracting states which promise to provide at minimum a "free appropriate public education" for all handicapped children within the state, 20 U.S.C. § 1412(1), and which agree to set up a complaint and appeal process for the children and their parents as the federal Act mandates. The key operative feature of the federal Act is the "individualized education program" (IEP). 20 U.S.C. § 1414(a)(5). The IEP process is the means through which the statutory mandate is "tailored to the unique needs of the handicapped child." [*Board of Education of Hendrick Hudson v. Rowley,* 458 U.S. 176, 181, 102 S.Ct. 3034, 3038, 73 L.Ed.2d 690 (1982)]. The IEP itself is formulated at a meeting of the parents, teachers, administrators and, where appropriate, the child. It must specify the instructional goals and objectives, any special services to be provided, and criteria for progress evaluation. *See* § 1401(19). The Act further requires at least an annual re-

view of each child's IEP and authorizes revisions where appropriate. § 1414(a)(5); *see also* § 1413(a)(1).

> If the parents or the child believe that the IEP the school system decides to implement provides a lesser education than they regard to be their legal right, or if they feel their procedural rights have been infringed, they have a right to an impartial due process hearing conducted by the state educational agency. § 1415(b)(2). Should any party be "aggrieved by the findings and decision" of the state administrative hearing, § 1415(e)(2) of the Act grants a right to bring a civil action in federal or state court.

775 F.2d at 414–15. The statute's allotment of administrative and judicial roles indicates that after a final determination regarding the IEP is reached, the proper forum for disputes is the courts.

■ In *Blazejewski v. Board of Education of Allegany Central School District,* 599 F.Supp. 975 (W.D.N.Y.1985) (Curtin, C.J.), the court distinguished cases covering due process issues, in which *Smith v. Robinson* would apply and EHA would preempt other remedies, from cases involving compliance with administrative decisions reached after the appropriate procedures were concluded. *Blazejewski,* 599 F.Supp. at 979. At issue in the present case is not the Committee on the Handicapped ("COH") decision regarding Dell's education needs, but rather the Board and the Commissioner's position regarding how those needs ought to be fulfilled. The court in *Blazejewski* stated:

> The judicial review provided in the EHA is available to parties "aggrieved by the findings and decision" at the administrative level. 20 U.S.C. § 1415(e)(2). The plaintiffs in this case filed their motion for a preliminary injunction not because they were "aggrieved" by an administrative decision. Rather the motion was filed because the defendants did not implement the favorable decision that was reached.

*Id.* In accordance with the reasoning in *Blazejewski,* plaintiffs are claiming a remedy for a breach of statutory rights under 42 U.S.C. § 1983. Plaintiffs are not circumventing the administrative remedies that must be exhausted under EHA. The court is convinced by plaintiffs' argument that they are perfectly satisfied with the COH's determination as to placement and classification and that their "harm" comes only from the failure by the Board of Education to implement the decision of the COH, by a determination of non-residence made outside the COH. This case is properly before this court under 42 U.S.C. § 1983 for violation of plaintiffs' statutory and constitutional rights.

■ Secondly, both defendants present what seems to be a ripeness issue. They argue that plaintiffs should not be allowed to proceed with this claim until they have received a definite response from the Catlins' new district of residence in Massachusetts. The issue before this court is whether the New York statute, as applied in determining Dell's residence to be that of his natural parents and not where he currently resides, withstands constitutional challenge. Whether, as a practical matter, Massachusetts or any other state would adopt the costs for Dell's education is irrelevant to the legal issues before this court. On this ground, also, this case is properly before this court at this time.

All parties agree that the only remaining issue is the State's determination of Dell's residence. Plaintiffs' first claim hinges on an equal protection challenge to the New York residence rule as applied in the present case. "When a State distributes benefits unequally, the distinctions it makes are subject to scrutiny under the Equal Protection Clause of the Fourteenth Amendment." *Hooper v. Bernalillo County Assessor,* —— U.S. ——, 105 S.Ct. 2862, 2866, 86 L.Ed.2d 487 (1985). With respect to classifications that present constitutional problems, courts are called to assure "that the classification reflects a reasoned judgment consistent with the ideal of equal protection by inquiring whether it may fairly be viewed as further-

ing a substantial interest of the state." *Plyler v. Doe,* 457 U.S. 202, 217–218, 102 S.Ct. 2382, 2395, 72 L.Ed.2d 786 (1982).

The State (the other defendants did not address the following issues in their papers) and plaintiffs basically rely on *Plyler v. Doe,* 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982), and *Martinez v. Bynum,* 461 U.S. 321, 103 S.Ct. 1838, 75 L.Ed.2d 879 (1982) on the proper equal protection analysis pertinent to residence requirements in the context of education services. Plaintiffs further refer to *Horton v. Marshall Public Schools,* 769 F.2d 1323 (8th Cir.1985) for the proposition that the state bears the burden of showing that the classification furthers a substantial interest in its application of residence requirements for access to free schooling. Defendant state alleges the standard should be the lower one of "rationally related to legitimate state interests."

The first issue in the equal protection analysis is the standard applicable. In *Horton, supra,* the court identified the standard as furthering a "substantial state interest in assuring that [a state's public education] services provided for its residents are enjoyed only by *residents* ..." (citing *Martinez v. Bynum,* 461 U.S. at 328, 103 S.Ct. at 1842.) However, in *Martinez,* the court also stated, in footnote 7, that

A bona fide residence requirement implicates no "suspect" classification, and therefore is not subject to strict scrutiny. Indeed, there is nothing invidiously discriminatory about a bona fide residence requirement if it is uniformly applied. Thus the question is simply whether there is a rational basis for it.

This view assumes, of course, that the "service" that the state would deny to nonresidents is not a fundamental right protected by the Constitution.

461 U.S. at 328, n. 7, 103 S.Ct. at 1842, n. 7.

Defendant State therefore argues that the Supreme Court in *Martinez* did not apply any strict or heightened scrutiny test.

■ In the present case, however, yet another scrutiny standard should apply to

reflect the interest involved. While the right to a free public education does not stem from the United States Constitution, the fourteenth amendment requires that a state which has undertaken to provide the opportunity of an education must make that opportunity available to all on equal terms. *Brown v. Board of Education*, 347 U.S. 483, 493, 74 S.Ct. 686, 691, 98 L.Ed. 873 (1954); *Plyler v. Doe*, 457 U.S. 202, 222–23, 102 S.Ct. 2382, 2397, 72 L.Ed.2d 786 (1982).

■ In *Plyler* the Court addressed the issue of the standard applicable when residency statutes are challenged on the basis of equal protection. Usually the only examination required is the "assurance that the classification at issue bears some fair relationship to a legitimate public purpose." *Id.* 457 U.S. at 216, 102 S.Ct. at 2394. However, statutes that affect a "suspect class" or a "fundamental right" require a showing by the state "that its classification has been precisely tailored to serve a compeling governmental interest." *Id.* at 217, 102 S.Ct. at 2395. A third, intermediate, standard applies in cases where the classifications, "while not facially invidious, nonetheless give rise to recurring constitutional difficulties; in these limited circumstances we have sought the assurance that the classification relfects a reasoned judgment consistent with the ideal of equal protection by inquiring whether it may fairly be viewed as furthering a substantial state interest." *Id.* Given that the Commissioner's application of the statute affects a subclass of children by limiting their access to a state-created right, and given the importance of education for this society, *Plyler* at 221–24, 102 S.Ct. at 2396–98, the application of the New York residence statute is subject to the intermediate standard of furthering a substantial goal of the state.

■ New York Education Law places the obligation to provide schooling without payment of tuition on the school district in which the child resides. N.Y.Educ.L. § 3202(1) (McKinney 1981). The Commissioner's finding that Dell was not a resident of Edmeston School District for edu-

cational purposes was based on § 3202(4)(b) of the New York Education Law, which states:

b. Children cared for in free family homes and children cared for in family homes at board, when such family homes shall be the actual and only residence of such children and when such children are not supported or maintained at the expense of a social services district or a state department or agency, shall be deemed residents of the school district in which such family home is located.

Although the statutory language would seem to point directly to deeming the child a resident "of the school district in which such family home [at board] is located," the Commissioner concluded that, since the Catlins had financial control over Dell, Dell's residence is that of his natural parents.

The Commissioner's conclusions are specifically as follows: (1) It is undisputed that Dell is cared for in a family home at board which is licensed by the Department of Social Services, and that he is not supported by a social services district or a state department or agency. (2) The Board's position is that the family home at board in which Dell resides is not his actual and only residence, because the child's parents continue to have parental authority and control over the child and are financially responsible for him. (3) A child's residence is presumed to be that of his parents, even if the child is not physically present in the parent's home; the presumption can be overcome by demonstrating that the parent neither exercises control over the child nor is financially responsible for the child. (4) The Catlins continue to be financially responsible for their son's support and maintenance; the responsibility delegated to the Condes can be terminated at any time. Thus, the Commissioner concluded that there was no basis upon which to conclude that the residence of the child should not be deemed to be that of his natural parents. *See,* Opinion by Gordon Ambach, Commissioner of Education of the State of New York, January 14, 1986, at 2–3.

The State contends that the Commissioner's findings are only an application of con-

stitutionally acceptable bona fide residence requirements. Furthermore, the State contends that "the same public interests and State interests in applying a bona fide residence test under traditional standards are present in this case as were present in *Martinez,*" Memorandum of Law on Behalf of State Defendant, 8–9. The court in *Martinez* described the bona fide residence requirement as furthering a substantial state interest as follows:

> A bona fide residence requirement, appropriately defined and uniformly applied, furthers the substantial state interest in assuring that services provided for its residents are enjoyed only by residents. Such a requirement with respect to attendance in public free schools does not violate the Equal Protection Clause of the Fourteenth Amendment ... A bona fide residence requirement simply requires that the person *does* establish residence before demanding the services that are restricted to residents.

*Martinez,* 461 U.S. at 328–29, 103 S.Ct. at 1842–43 (footnotes omitted).

The question before this court is, therefore, whether the New York residence requirement, as applied, does further the substantial state interests identified in *Martinez.*

The interests on the child's side are fairly easy to identify. It is not controverted that Dell's reason for the claim to residence in Edmeston School District is not solely to benefit from the free school system. Dell's social, civic and actual family life centers around the home the Condes have provided. It is also uncontroverted that unless the Edmeston School District assumes the cost of Dell's education, Dell will have to move, probably to Massachusetts, for the Catlins could not bear the cost of the child's tuition in New York. Moving Dell would disrupt his world as he has always known it, with results which presumably would be very harmful to him. Or the child would have to be removed from school, remaining in Edmeston, also with serious detriment resulting for him.

The State's interests are those presented in *Martinez.* The first interest listed in

Martinez is "local control over the operation of schools; local autonomy has long been thought essential both to the maintenance of community concern and support for the public schools and to quality of the educational process." *Martinez,* 461 U.S. at 329, 103 S.Ct. at 1843 [citing *Milliken v. Bradley,* 418 U.S. 717, 94 S.Ct. 3112, 41 L.Ed.2d 1069 (1974)]. This case presents no problem whatsoever with local autonomy. All decisions regarding Dell's education have been made pursuant to consultation with the Condes, and primarily, if not absolutely, according to their judgment. Tr. 28–29. Another related interest, proper planning and operation of the schools, would not be affected at all from allowing Dell to remain in Edmeston at the school district expense. *See Martinez,* 461 U.S. at 329, 103 S.Ct. at 1843.

The other concerns mentioned in *Martinez,* all related to the planning problems that would result from substantial school population fluctuations, simply are not present in this case. See *Martinez,* Id., 461 U.S. at 328 & n. 9, 103 S.Ct. at 1843 & n. 9.

Other possible arguments, which the State did not make but which the court will address to make its position as clear as possible, appear in *Horton.* The language in *Martinez* regarding the school district's interest in assuming that services provided for residents are enjoyed only by residents, could be read as an interest in limiting education to children of those who support the school system as taxpayers. *Horton,* 769 F.2d at 1331. This argument, and the closely related one of preservation of resources, have been clearly rejected as legitimate state interests absent a clear showing of the state's purpose. *Id.* (citing *Hooper v. Bernalillo County Assessor,* 105 S.Ct. at 2868 & n. 13; *Plyler v. Doe,* 457 U.S. 202, 227, 102 S.Ct. 2382, 2400, 72 L.Ed.2d 786 (1982)).

Another argument provided in *Horton* reflects the interest school districts have in having somebody with whom "a school official may deal ... effectively and authoritatively in matters of punishment, educational progress and medical needs" *Hor-*

*ton,* 769 F.2d at 1331. The Edmeston School District's recognition of the Condes as the persons responsible for decisions regarding Dell's education makes this a moot issue. De facto, the Condes are the persons in charge of Dell's education and the school district has never challenged their authority.

The court concludes therefore, that the State has failed to show that the New York residency statute, as applied in this case, furthers any substantial state interest. As applied in this case, the New York residence requirement offends the Equal Protection Clause of the Fourteenth Amendment. Other grounds for plaintiffs' claims need not be addressed.

Given that the Edmeston School District has continued to provide Dell with school services during this dispute, this judgment is limited to invalidating the Commissioner's determination as to residence.

Therefore, defendants' motions for summary judgment are hereby denied. Plaintiffs' cross motion for summary judgment is granted as limited above.

IT IS SO ORDERED.