NANCY M

v.

SCANLON, et al.

Civ. A. No. 82–1017.

United States District Court,
E.D. Pennsylvania.

June 30, 1987.

Janet F. Stotland, Education Law Center, Inc., Philadelphia, Pa., for plaintiff.

Allen C. Warshaw, Chief Deputy Atty. Gen., Harrisburg, Pa., for Secretary of Educ. of Com. of Pa. and Com'r of Basic Educ. of Com. of Pa.

Philip R. Detwiler, Norristown, Pa., for Norristown Area School Dist. and Superintendent of Norristown Area School Dist.

Michael I. Levin, Harrisburg, Pa., for amicus curiae Pennsylvania School Boards Assn.

## MEMORANDUM AND ORDER

DITTER, District Judge.

The question presented in this case is the constitutionality of a Pennsylvania law that allows a school district to differentiate between non-resident, dependent foster children and other non-resident children.

### I.

Plaintiffs brought this class action to challenge the validity of section 13–1305(b),[1] of the Pennsylvania Public School Code of 1949, 24 Pa.Stat.Ann. §§ 1–101 et seq. (Purdon 1962 & Supp.1987), on the basis that it violates their rights under state and federal constitutional and statutory law.[2] Section 1305(b) permits a Pennsylvania school district to refuse to accommodate non-resident, dependent children who live in foster homes within the district.[3]

Dependent children under Pennsylvania's Juvenile Act, 42 Pa.Cons.Stat.Ann. §§ 6301 et seq. (Purdon 1982 & Supp.1987), are minors who lack the parental care or control necessary for their physical, mental, emotional, or moral well being. See 42 Pa. Cons.Stat.Ann. § 6302. These children are removed from their parental homes by court order and placed by state licensed agencies either with foster parents, who receive compensation for the support of the child, or in institutions. Foster parents, as that term is used in this memorandum, include only those who receive compensation for the support of children who have been adjudicated dependent. Placement agencies prefer foster homes over institutions for the emotional well-being of the child. Children who are placed in a school district other than where their parents reside are non-resident children. See infra note 7 and accompanying text.

The parties have completed discovery and have filed cross-motions for summary judgment. Additionally, the Pennsylvania School Boards Association has filed an amicus curiae brief in opposition to the plaintiffs' motion. I will grant plaintiffs' motion on the basis that section 1305(b) is

1. This statute became effective on July 1, 1970, and is the same statute cited in the class certification order. See infra text at 725.

2. Specifically, plaintiffs allege a violation of their rights under the equal protection and due process clauses of the fifth and fourteenth amendments (Counts I, II and VI), article 3 section 14 of the Pennsylvania Constitution (Count III), the Education for All Handicapped Children Act of 1975, 20 U.S.C. §§ 1401 et seq. (1978 & Supp.1987) (Count IV), the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Supp.1987) (Count V), and Pennsylvania statutes, 24 Pa.Stat. Ann. §§ 13–1371 et seq. (Purdon 1962 & Supp. 1987).

3. Section 1305(b) provides:

(b) Any resident of any school district, before accepting custody of a non-resident child of school age for *compensation* by order of court or by arrangement with an association, agency, or institution having the care of dependent or neglected children, must secure, from the super-

intendent of schools or school board in that district, a statement in writing that the child can be accommodated in the schools of the district or that the child can not be accommodated and the reasons therefor. If such statements are not furnished within two weeks after a request in writing has been made to the board's secretary, [or] the superintendent of schools, the board's assent shall be assumed, and the child shall be admitted to the schools of the district as a pupil. If such statement sets forth conditions such as to exempt the district under this section from accepting the child as a pupil, and if such exemption is not disapproved on appeal by the Superintendent of Public Instruction, and if other arrangement for the child's schooling satisfactory to the district superintendent is not made, the child may not be placed in the district.

Appeal from the claim of any school district for exemption, as provided in this section, may be taken to the Superintendent of Public Instruction, and his decision thereon after investigation shall be final. (emphasis added).

unconstitutional on its face and as applied to the plaintiff class and subclass because it violates the equal protection clause of the fifth amendment, applicable to the states through the fourteenth amendment. Consequently, I will not consider the other grounds raised by plaintiffs to challenge this statute.

## II.

In 1971, plaintiff Nancy M., a handicapped child, was adjudicated dependent, was removed from her natural mother and home in Philadelphia, and eventually, in 1980, was placed with a qualified foster mother residing in Norristown. Since 1976, Nancy M. had been attending a private school for handicapped students. However, in July of 1981 her age exceeded the school's limit and she requested that the Norristown Area School District provide an educational program for her during the 1981–82 school year. The district denied her request, pursuant to section 1305(b), on the basis that it could not place her in an appropriate special education program within the district and refused to accommodate her throughout the subsequent appellate proceedings until July of 1982.

Similarly, plaintiff Bruce A. is a handicapped child who, at birth, was adjudicated dependent under the Juvenile Act and, at the age of two, was placed in a foster home in Norristown. Bruce A. attended public school in Norristown from 1972 until 1980 when he was temporarily removed from the foster home because of problems arising from his disability. Prior to returning to his foster home in 1981, Bruce A. requested that the district provide an education for him. The district refused, pursuant to section 1305(b), on the basis that it could not place him in an appropriate special edu-

cation program within the district and refused to accommodate him throughout the subsequent appellate proceedings until April of 1983.

These individuals represent the following plaintiff class:

> All school-aged residents of Pennsylvania who are now or in the future adjudicated dependent under the Juvenile Act and who are subject to the provisions of Pa. Stat.Ann. tit. 24, § 1305(b) (Purdon 1970)

and subclass:

> All school-aged *handicapped* residents of Pennsylvania who are now or in the future adjudicated dependent under the Juvenile Act and who are subject to the provisions of Pa.Stat.Ann. tit. 24, § 1305(b) (Purdon 1970)

*see* Court Order (December 29, 1982) (emphasis added), which have brought suit against the Pennsylvania Secretary of Education, the Pennsylvania Commissioner of Basic Education, the Norristown Area School District, and the Norristown Superintendent.[4]

## III.

Initially, defendants argue[5] that principles of abstention and mootness preclude the exercise of jurisdiction over this action. I have already considered and rejected the abstention argument and will not reconsider it here. *See* Court Order (August 11, 1982).

■ I will also reject the mootness argument. Although the state has adopted certain regulations prohibiting school districts from excluding non-resident foster children on the basis of a handicap,[6] all non-resident foster children must continue to request and receive accommodation from the non-resident school district, which may continue

---

**4.** Although the defendants originally named when this action was filed no longer hold office, their successors are automatically substituted pursuant to Fed.R.Civ.P. 25(d)(1) and are sued in their official capacity.

**5.** For the purpose of analysis, I will attribute to the defendants collectively the arguments advanced by each of the defendants and by the amicus curiae as no purpose would be served by

distinguishing among their respective arguments and addressing them separately.

**6.** *See* 22 Pa.Code § 11.17 (effective July 20, 1985). The substance of these regulations were previously issued by the Pennsylvania Department of Education in the form of Basic Education Circulars, BEC 2–82, 5–84, which became effective in May, 1982, and October, 1984, respectively.

to exclude them. The remedial regulations may eliminate some of the additional discrimination which was suffered by the plaintiff sub-class on the basis of handicaps, but they do nothing to eliminate the classification of non-resident foster children. Thus, the essential discriminating characteristic of section 1305(b) remains unchanged.

## A.

Section 13–1305(b) is part of Pennsylvania's Public School Code which provides a free, public, compulsory education for every child in the school district of his or her residence (hereafter the "resident school district"). *See* 24 Pa.Cons.Stat.Ann. §§ 13–1301 *et seq.* A child's resident school district is determined by where his or her parents or guardians reside, not by where the child lives. *See* 24 Pa.Cons.Stat.Ann. § 13–1302.[7] A foster parent, receiving compensation for the support of a foster child, is neither a parent nor guardian within the meaning of this statute. *See In re Montgomery*, 10 Pa.D. & C.3d 439, 442 (1979). *Cf. Martinez v. Bynum*, 461 U.S. 321, 323 n. 1, 103 S.Ct. 1838, 1839 n. 1, 75 L.Ed.2d 879 (1983) (under Texas statute foster parent is guardian); *Rabinowitz v. New Jersey State Board of Education*, 550 F.Supp. 481, 483 n. 1 (D.N.J.1982) (under New Jersey law foster child is deemed resident of district in which foster home is located).

In addition, the Code provides that some non-resident children are entitled to the same school privileges as resident children. For example, non-resident school children living in an institution are entitled to attend the public schools of that district and enjoy the same rights as resident children. *See* 24 Pa.Cons.Stat.Ann. § 13–1306 (institutionalized children).[8] *See also Pires by Pires v. Commonwealth Dept. of Education*, 78 Pa. Comwlth. 127, 467 A.2d 79 (1983). The same is true of a non-resident child living with someone who maintains the child without charge, so long as the living arrangement is continuous and not merely through the school term. *See* 24 Pa.Cons.Stat.Ann. § 13–1302 (section 1302 children).[9] *See also In re Montgomery*, 10 Pa.D. & C.3d 439 (1979). However, non-resident children who live with foster parents may be excluded from being educated in that district under the provisions of section 1305(b). In short, section 1305(b) differentiates between non-resident children living with a paid foster parent and those with some other living arrangement.

Plaintiffs do not challenge the state's authority to impose a bona fide residency requirement. Rather, they challenge the state's disparate application of that requirement which allows exception for non-resident children supported without charge, and for non-resident children living in institutions, but not for non-resident dependent children supported for compensation. *See Martinez v. Bynum*, 461 U.S. 321, 328, 103

---

**7.** This statute provides in pertinent part: "A child shall be considered a resident of the school district in which his parents or guardian of his person resides."

**8.** Section 13–1306 provides in part:
The board of school directors of any school district in which there is located any orphan asylum, home for the friendless, children's home, or other institution for the care or training of orphans or other children shall permit any children who are inmates of such homes, but not legal residents in such district, to attend the public schools in said district either with or without charge for tuition, textbooks, or school supplies, as the directors of the district in which such institution is located may determine.

**9.** This statute provides in relevant part:
... When a resident of any school district keeps in his home a child of school age, not his own, supporting the child *gratis* as if it were his own, such child shall be entitled to all free school privileges accorded to resident school children of the district, including the right to attend the public high school maintained in such district or in other districts in the same manner as though such child were in fact a resident school child of the district, and shall be subject to all the requirements placed upon resident school children of the district. Before accepting such child as a pupil, the board of school directors of the district may require such resident to file with the secretary of the board a sworn statement that he is a resident of the district, that he is supporting the child gratis, that he will assume all personal obligations for the child relative to school requirements, and that he intends to so keep and support the child continuously and not merely through he school term. (emphasis added)

S.Ct. 1838, 1842, 75 L.Ed.2d 879 (1983) (upholding constitutionality of uniformly applied residency requirement).

### B.

The equal protection clause guarantees that persons who are similarly situated receive similar treatment. On the other hand, differently situated persons may receive differential treatment. Initially, the state legislature determines whether persons are similarly or differently situated and may classify groups of persons accordingly, so long as the classification is adequately tailored to serve a state interest. The degree of tailoring required and the importance of the state interest which must be served varies depending on the nature of the classification and the rights regulated by the statute. *See Plyler v. Doe,* 457 U.S. 202, 216–18, 102 S.Ct. 2382, 2394–95, 72 L.Ed.2d 786 (1982).

The most deferential standard of review applied to a state statute challenged under the equal protection clause requires only that the classification is rationally or fairly related to a legitimate state interest. *See Plyler v. Doe,* 457 U.S. at 216, 102 S.Ct. at 2394. If the state makes this showing the classifying statute is upheld. All classifications are judged by this standard with the following exceptions.

First, if the classifying statute discriminates against a "suspect class," such as a class based upon race, or restricts a "fundamental right," such as voting, the most stringent standard of review is applied, and the state must show the classification is "precisely tailored to serve a compelling governmental interest." *Plyler v. Doe,* 457 U.S. at 217, 102 S.Ct. at 2395.

Second, if the classifying statute "give(s) rise to recurring constitutional difficulties," *id.,* because it involves a "sensitive class," such as a class based upon gender, illegitimacy, or alienage, or because it involves "concerns sufficiently absolute and enduring," such as education, *id.* at 218 n. 16, 221–25, 102 S.Ct. at 2395 n. 16, 2396–99, then an intermediate standard of review is applied. This level of scrutiny requires the state to show that the classification is "substantially related to the achievement of important governmental objectives." *See Price v. Cohen,* 715 F.2d 87, 92 (3d Cir.1983), *cert. denied,* 465 U.S. 1032, 104 S.Ct. 1300, 79 L.Ed.2d 700 (1984).

In this case, foster children are classified separately from all other children for purposes of accommodation in non-resident school districts. While foster children are not an inherently suspect class, like the recognized sensitive classes, they comprise a discrete group of persons who, in the vast majority of cases, lack responsibility for and control over their status,[10] and the power to change it, but who may, nevertheless, because of their status, be precluded from attending school in a non-resident district. *See Plyler v. Doe,* 457 U.S. at 218–24, 102 S.Ct. at 2395–98. While, theoretically, these children maintain the right to attend school in their resident district, distance often makes this a practical impossibility.[11]

Consequently, I conclude that the classification of foster children involves a sensitive class of persons whose substantial interest in a free, public education requires the application of intermediate scrutiny. *See Plyler v. Doe,* 457 U.S. at 224, 102 S.Ct. at 2398 (applying intermediate scruti-

---

10. Plaintiff has submitted the affidavit of Stephen P. Fisher, Assistant to the Executive Director for CONCERN, a non-profit child welfare agency, which states that 85–90% of the children placed by CONCERN have been adjudicated dependent because they were abused, neglected, or abandoned. Presumably, the remaining 10–15% of the children placed by CONCERN have been adjudicated dependent because they were truant, disobedient, or delinquent. There is no reason to believe that these figures are not representative of the children placed by other agencies throughout the state.

11. Foster children are frequently placed in non-resident school districts as a result of the limited number of foster homes which are available and the following considerations affecting placement: separating the child from harmful influences in the resident district; avoiding racial isolation in the new community; and, matching the specific requirements of the child and the family, which may entail, for example, the ability to accommodate siblings or a handicap.

ny to alien children excluded from public schools); *Horton v. Marshall Public Schools,* 769 F.2d 1323, 1330 (8th Cir.1985) (applying intermediate scrutiny to classification of minor children who do not have a parent or legal guardian living in the school district); *Catlin v. Ambach,* 644 F.Supp. 161, 166 (N.D.N.Y.1986) (applying intermediate scrutiny to statute affecting subclass of children by limiting their access to free public education). Accordingly, section 1305(b) must be struck down under the equal protection clause unless the state shows that foster children are situated differently from other children and that this classification is substantially related to the achievement of an important government interest.

## IV.

■ There is no legislative history from which to infer the legislature's purpose in enacting section 1305(b). Defendants contend that non-resident, foster children are singled out because they are situated differently from all other non-resident school children—particularly from non-resident, institutionalized school children—and that this classification furthers the state's interest in providing a public education with administrative and economic efficiency. In support of this position, defendants identify the following four bases to distinguish foster children from institutionalized children.

### A.

First defendants argue that because a school district knows the capacity of an institution, but does not know the number of foster homes within its area, it can better plan for the accommodation of institutionalized children. Presumably, a school district can ascertain the number of state approved foster homes within its area and then can plan to accommodate the fluctuating population of foster children as efficiently as it currently plans to accommodate the fluctuating population of other non-resident (and resident) school children. If a school district lacks the information necessary to plan for the accommodation of foster children, that is a reason to obtain the missing information, not a reason to single out foster children for exclusion.

Second, defendants contend that because there are more foster homes than institutions, there is greater discretion over placement, and a suitable foster home can be found within the foster child's resident school district, or within a non-resident district which can provide accommodation. Assuming this statement is true,[12] it is irrelevant because whatever discretion may be involved is exercised by a state authorized agency, not the child. The child must comply with the placement decision, regardless of its impact on his continuing interest in an accessible, free, public education. To deny a foster child accommodation in a non-resident school district because the state could have placed him in the resident district, but did not, is patently absurd and is no basis to distinguish unfavorably the non-resident foster child from the non-resident institutionalized child who may be voluntarily placed by the parents, rather than mandatorily placed by the state.

Third, defendants assert that institutions are often charitable organizations in contrast to foster parents who receive compensation. Defendants do not explain what difference this makes to the child's educational privileges; most likely because it makes none.

Finally, defendants state that, unlike foster home placement, institutional placement is often the last step taken when there are no other alternatives for the child. This argument is another version of the second and must be rejected for the same reason: regardless of the placement alternatives available to the state authorized placing agency, the state, which places the child, can not discriminate against the child based upon the placement. In making this argument, defendants vaguely assert that institutional placement is "thought to be more permanent." As this statement is both unclear and factually unsupported by the

**12.** *But see* note 11 *supra.*

record, I can not conclude that this is a valid basis upon which to distinguish between non-resident foster and institutionalized children.

In sum, defendants have not shown any basis for classifying foster children separately from institutionalized or other children so far as public education is concerned.

### B.

Neither have defendants shown that the section 1305 classification substantially furthers the state's asserted interests in either administrative or economic efficiency. Requiring foster children to request and receive accommodation in a non-resident district does not alter the economic obligations of either the resident or non-resident districts. Under the Public School Code, a child's resident school district is responsible for educational costs, remains responsible even if the child attends school in a non-resident district, and must reimburse the non-resident district for these costs. *See* 24 Pa.Stat.Ann. §§ 25–2503(c); 25–2509; 25–2509.1; 25–2561(2), (3) and (5) (Purdon 1962 & Supp.1987). Thus, no matter which school district accommodates the foster child, the economic effect on the state, the resident, and the non-resident district remains constant.

Additionally, it would appear that the administrative burden imposed by section 1305(b)—requiring request for accommodation, a written statement granting accommodation or stating the reasons for exemption, and providing for an administrative appeal prior to any judicial appeals—outweighs the administrative burden of providing accommodation for a fluctuating population of students without such an elaborate scheme, as it apparently does for all other children. This conclusion is reinforced by the defendants' failure to explain why all other school children, including institutionalized and section 1302 school children can be more efficiently accommodated without the section 1305(b) procedure, while only foster children are more efficiently accommodated with the section 1305(b) procedure. Thus, while the state has a legitimate, perhaps even substantial, interest in economic and administrative efficiency, these interests are not furthered by the section 1305(b) classification of foster children, and in any event, these interests may not be furthered at the expense of non-resident foster children who have not been shown to be differently situated than other non-resident children.

### V.

While education is not a fundamental right guaranteed by the Constitution, historically it has been one of the most cherished values embraced by American society and "is perhaps the most important function of state and local governments." *Plyler v. Doe,* 457 U.S. at 221–24, 102 S.Ct. at 2396–98 (quoting *Brown v. Board of Education,* 347 U.S. 483, 493, 74 S.Ct. 686, 691, 98 L.Ed. 873 (1954)). Accordingly, Pennsylvania, like every other state, has undertaken the significant and difficult task of providing a free public education for all of its school children. Having assumed this responsibility, Pennsylvania must carry it out in a manner consistent with the equal protection clause incorporated by the fourteenth amendment. In this case, the section 1305(b) classification violates the equal protection clause because defendants have not shown that foster children are situated differently from other non-resident children, including non-resident institutionalized and section 1302 children, so far as education is concerned, or that this classification is substantially related to the achievement of the state's interest in providing an economically and administratively efficient public education. To the extent that foster children are situated differently because they have been adjudicated dependent by the state, and placed in foster homes by state-licensed agencies, the state is under no less obligation to provide a free, public education in a non-resident district than it is for other school children.

An order follows.

### ORDER

1. Plaintiffs' motion for summary judgment is granted for the reasons stated in

the accompanying memorandum, and judgment is entered in favor of plaintiffs and against defendants.

2. Section 13–1305(b) of the Pennsylvania School Code of 1949, 24 Pa.Stat.Ann. § 13–1305(b), is declared unconstitutional as violative of the equal protection clause of the fifth and fourteenth amendments of the United States Constitution.

3. Defendants are ordered to provide public education services to members of the plaintiff class and plaintiff subclass in the school districts in which their foster families reside in accordance with 24 Pa.Stat. Ann. § 1305(a) (Purdon 1962).

4. Defendant Secretary of Education of the Commonwealth of Pennsylvania shall immediately notify the concerned officials of the Commonwealth of Pennsylvania of this Memorandum and Order.

5. Within 20 days plaintiffs' attorney shall submit a properly supported petition for reasonable attorneys' fees. Defendants' attorney shall file any objection within 10 days thereafter.