Billie Carl MAJOR, et al., Plaintiffs,

v.

NEDERLAND INDEPENDENT
SCHOOL DISTRICT, et
al., Defendants.

Civ. A. No. 1:91–CV–26.

United States District Court,
E.D. Texas,
Beaumont Division.

May 20, 1991.

Shimon Kaplan, East Texas Legal Services, Beaumont, Tex., for plaintiffs.

Tanner T. Hunt, Jr., Wells, Peyton, Beard, Greenberg, Hunt & Crawford, Beaumont, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

COBB, District Judge.

The plaintiffs, Billie Carl Major and her daughter, Naomi Lyn Lyons (Plaintiffs), and the defendants, the Nederland Independent School District and Lee Robinson, in his official capacity as Superintendent of Schools, Nederland Independent School District (NISD), have each filed motions for summary judgment. As is fully set forth below, the Plaintiffs' motion is granted and the NISD's motion is denied.

## I. INTRODUCTION

Plaintiffs filed suit on January 4, 1991 under 42 U.S.C. § 1983 alleging that the NISD maintains an admissions policy that violates state and federal law. Specifically, the Plaintiffs alleged that Naomi Lyn Lyons (Naomi) was under eighteen years of age and had established a residence separate and apart from her parent, guardian, or other person having lawful control of her under an order of a court, and that her presence in the NISD was not for the primary purpose of attending school there. The Plaintiffs further alleged that the NISD, acting in accordance with its policy, wrongfully refused to admit Naomi on the grounds that Naomi was not residing within the NISD with a parent or legal guardian. Plaintiffs sought declaratory and injunctive relief and damages. Finding the NISD's actions were causing Naomi an immediate and irreparable injury, this court entered a TRO on January 8, 1991, directing the school district to admit Naomi.[1]

## II. FACTUAL BACKGROUND

Naomi is fifteen years old and a United States citizen. She is the daughter of Billie Carl Major and John W. Lyons, formerly of Abbeville, Louisiana. When the Lyons divorced in 1984, a Louisiana court appointed Billie Carl Major sole managing conservator of Naomi. Naomi and her mother lived together in Orangefield, Orange County, Texas after the divorce. However, after Billie Carl Major remarried, her relationship with her daughter deteriorated. To say Naomi did not get along with her mother and stepfather would be an understatement. Naomi cursed at her mother and stepfather, beat her 13 year old stepbrother and frequently ran away from home. Her mother's words: "Naomi wants to make you knock her through the wall." Billie Carl Major placed Naomi in a psychological hospital for two months in response to Naomi's behavior. Then on November 1, 1990 Naomi ran away again, this time choosing to stay with her boyfriend and his parents, Beverly and David Munselle. The Munselles agreed with Billie Carl Major to provide Naomi living accommodations, including her own bedroom, indefinitely. During her stay with the Munselles, Naomi was happy and well adjusted; her mother termed it: "she is like a totally different child." Officials with the Texas Department of Human Services and the Orange County Juvenile Probation Department concurred that it was in Naomi's "best interest" that she remain with the Munselles. Unable to pay an attorney to obtain a court order appointing the Munselles managing conservators or legal guardians of Naomi, Billie Carl Major granted the Munselles, in writing, power of attorney for any and all purposes concerning Naomi, including authority to make decisions regarding her education and health care. Beverly Munselle executed another nota-

---

1. The following colloquy at the TRO hearing between the court and Lee Robinson, Superintendent of Schools for the NISD, amply illustrates the NISD's policy:
   THE COURT: Well, that's just your flat policy, that if the parents or the guardian don't live there, they don't get in?
   ROBINSON: That's right.
   THE COURT: And that is the way that you interpret the law?
   ROBINSON: That's right.
   (TRO Hearing Transcript at pp. 73–74)

rized document memorializing the agreement between herself and Naomi's parents that Naomi would be living with the Munselles for the remainder of the 1990–91 school year. The Munselles, however, live in Nederland, within the NISD.

In early November, Billie Carl and John Major and Beverly Munselle took Naomi to the NISD's Central Middle School to register her for the eighth grade. They presented the previously described power of attorney form and letters from the state agencies indicating that it was in Naomi's best interest to live with the Munselles in Nederland, told NISD officials that Naomi was not living within the NISD for the primary purpose of attending school there, and offered to draft and present any form of power of attorney the NISD felt necessary to assure the NISD that the Munselles would be legally responsible for Naomi.[2] But the NISD still refused to allow Naomi to attend school there, unless she instituted proceedings to install the Munselles as Naomi's managing conservator.[3] This lawsuit followed.

In the interim, Naomi has returned to Orangefield and, since February 5, 1991, has been attending school there. Thus while the Plaintiffs no longer seek Naomi's admission to the NISD, they continue to seek (1) a judgment declaring the NISD's policy void as violative of both the Texas Education Code and the Equal Protection and Due Process clauses of the 14th amendment; (2) nominal damages for the violation of Naomi's constitutional rights; and (3) costs and reasonable attorneys' fees.

## III. THE LAW

### A. Procedural Issues

The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 1367. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). The court conducted an extensive hearing on the Plaintiffs' motion for a temporary restraining order during which the Plaintiffs testified, as did Lee Robinson, the NISD representative. A thorough review of the transcript of this hearing together with the various forms of documentary evidence in the record convinces the court that there remains no genuine issue as to any material fact. The posture of this action is such that summary judgment is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56.

■ As preliminary matters, the NISD asserts that the Plaintiffs' claim is moot and also that the Plaintiffs have failed to exhaust state administrative remedies. To support their mootness claim, the NISD avers that Naomi has returned to school in the Orangefield School District and thus there no longer remains an Article III "case or controversy." The court disagrees. Although Naomi no longer seeks admission to the NISD, the balance of her claims remain viable. She is entitled to pursue her claim for damages for the past violation of her constitutional rights. And, since this is the type of legal dispute that is "capable of repetition, yet evading review," see Roe v. Wade, 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973), she is also entitled to seek declaratory relief regard-

---

**2.** The primary purpose for Naomi's presence in the NISD was made clear at the TRO hearing. First, an exchange between the Plaintiffs' attorney and Billie Carl Major:

Q: Why did you agree that she [Naomi] could live with the Munselles?
A: So that she could grow up with a normal, happy household, and my son could have peace of mind, and me and my husband could also.
Q: And it had nothing to do with the school district?
A: No, sir.
(Tr. 19)

Next, an exchange between the Plaintiffs' attorney and Lee Robinson, the NISD's Superintendent of Schools:
Q: Do you have any information which would lead you to believe the reason that Naomi has moved into the—into Nederland is to avoid the integrated schools?
A: No, sir.
(Tr. 74)

**3.** The Assistant Superintendent of Schools for the NISD, Nelson W. Guidry, described the forms tendered by the Majors and the Munselles as "not worth the paper they were written on." (Tr. 17–18)

ing the NISD's admissions policy. Here, both prerequisites to circumventing a mootness bar are present: (1) the NISD's refusal to admit Naomi was but a fleeting event, and (2) there is a reasonable expectation that Naomi would be subjected to the same action by the NISD in the future, if, for example, she were to again live with the Munselles and seek to attend school in the NISD. *See* C. Wright, *Law of Federal Courts,* § 12 at p. 55 (4th Ed.1983).

■ The NISD also claims that this suit is premature because the Plaintiffs have failed to exhaust their administrative remedies. On this point, the court also disagrees. First, it is abundantly clear to the court that the parties are intimately familiar with one another's factual and legal positions. The NISD has been aware of the Plaintiffs' claims since at least December 19, 1990 when their attorney received the Plaintiffs demand letter, which outlined with particularity the factual and legal bases of their claim. It is highly unlikely that forcing the parties to undergo a costly and time consuming sojourn through the NISD's administrative channels would shed further light on this dispute. This demand of the NISD can be little more than a vexatious exercise in futility. Second, this procedural defense of the NISD is legally untenable. The Plaintiffs are simply not required by law to exhaust their state administrative remedies prior to bringing a § 1983 action. *See Patsy v. Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982).

### B. Texas Education Code § 21.031

The NISD has *de facto* established a class composed of minor children who live within the school district, seek to attend school there, do not live with a parent, legal guardian, or court appointed guardian, and are not residing in the school district for the primary purpose of attending school there. Members of this class are excluded by the NISD from enrolling in their school district. This policy violates Texas law.

■ Tex.Educ.Code.Ann. § 21.031 (Vernon 1987 & Supp.1991) endows students, in situations like Naomi's, with an absolute right to attend the free public schools of the district in which they reside.[4] To be enrolled in school, all these students need show is that (1) they are under the age of 18 years; (2) they have established a residence separate and apart from their parent,

4. § 21.031 provides, in relevant part:

(b) Every child of this state who is a citizen of the United States or a legally admitted alien and who is over the age of five years and not over the age of 21 years on the first day of September of the year in which admission is sought shall be permitted to attend the public free schools of the district in which the child or his parent resides at the time he applies for admission; the child and his guardian or other person having lawful control of him under an order of a court reside at the time he applies for admission; *or the child has established a separate residence under Subsection (d) of this section.* A district may require evidence that a child is eligible to attend the public free schools of the district at the time the district considers an application for admission of the child.

(c) *The board of trustees of any public free school district of this state shall admit into the public free schools of the district free of tuition all persons* who are either citizens of the United States or legally admitted aliens and who are over five and not over 21 years of age at the beginning of the scholastic year *if* such person or his parent resides within the school district; such person and his guardian or other person having lawful control of him under an order of a court reside within the school district; or *such person has established a separate residence under Subsection (d) of this section.*

(d) In order for a person under the age of 18 years to establish a residence for the purpose of attending the public free schools separate and apart from his parent, guardian, or other person having lawful control of him under an order of a court, it must be established that his presence in the school district is not for the primary purpose of attending the public free schools. The board of trustees shall be responsible for determining whether an applicant for admission is a resident of the school district for purposes of attending the public schools, and may adopt *reasonable* guidelines for making a determination as necessary to protect the best interest of students.

(e) A child placed in foster care by an agency of the state or a political subdivision shall be permitted to attend the public free schools in the district in which the foster parents reside free of any charge to the foster parents or the agency. No durational residence requirement may be used to prohibit such a child from fully participating in any activity sponsored by the school district.

(emphasis supplied)

948

guardian, or other person having lawful control of them under an order of court; (3) their presence in the school district is not for the primary purpose of attending the public free schools there; and (4) they wish to enroll in school. On November 1, 1990, when Billie Carl Major and Beverly Munselle sought to register Naomi for school in the NISD, they fully complied with the dictates of § 21.031. They advised NISD officials, either orally or by way of the documents described above, (1) that Naomi was under 18 years of age; (2) that Naomi was living indefinitely with the Munselles; (3) that the primary purpose for Naomi's presence in the NISD was her inability to live with her family; and (4) that she wished to enroll in a school within the NISD. When the NISD denied Naomi admission on the basis of a policy requiring students to reside in the district with a parent or legal guardian, regardless of the "primary purpose" for which the student was present in the school district, the NISD acted in clear violation of § 21.031.[5] This court's interpretation of § 21.031 is consistent with other courts' reading of the statute. *See Martinez v. Bynum,* 461 U.S. 321, 103 S.Ct. 1838, 75 L.Ed.2d 879 (1983); *Byrd v. Livingston Independent School District,* 674 F.Supp. 225 (E.D.Tex.1987).

### C. The Equal Protection Clause

■ The Plaintiffs next allege that the NISD's peculiar application of § 21.031 violates the Equal Protection Clause of the 14th amendment to the United States Constitution. The court agrees. The NISD's policy of requiring students to reside in the district with a parent or a legal guardian, apparently ignoring the "separate and apart" language of § 21.031(d), effectively creates "a discrete class of children not accountable for their disabling status." *Plyler v. Doe,* 457 U.S. 202, 223, 102 S.Ct. 2382, 2398, 72 L.Ed.2d 786 (1982). The Court in *Plyler v. Doe* applied an interme-

diate form of judicial scrutiny to an antecedent version of § 21.031 in an action brought by a class composed of the children of illegal aliens who were effectively prohibited from receiving a free public school education. In the action *sub judice,* the statute has changed, a different subsection is at issue, and the plaintiffs are not children of illegal aliens. However, Naomi and other children similarly situated are "a discrete class of children not accountable for their disabling status." And, while a free public school education is not a fundamental right, *see San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 35, 93 S.Ct. 1278, 1298, 36 L.Ed.2d 16 (1973), "... it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education. Such an opportunity, where the state has undertaken to provide it, is a right which must be made available to all on equal terms." *Brown v. Board of Education,* 347 U.S. 483, 493, 74 S.Ct. 686, 691, 98 L.Ed. 873 (1954). Accordingly, the court finds the level of scrutiny set forth in *Plyler v. Doe* appropriate to the facts of this case: the NISD's policy cannot be upheld absent "a showing that it furthers some substantial state interest." *Plyler v. Doe,* 457 U.S. at 230, 102 S.Ct. at 2401–02.

The state interest that the NISD seeks to further through its admissions policy is the need to prevent school overcrowding. The NISD argues that its schools are filled to capacity, partly because the district has become a haven for white students who seek to avoid integrated schools in neighboring districts, so-called "white flight." Blacks constitute 1% of the NISD's student population. This school year alone, NISD officials turned down the applications of 300 students wishing to transfer to the NISD. Also, NISD officials have discovered students enrolled in the district who actually reside elsewhere and have submitted fraudulent addresses listing their residence as within the NISD. When these

5. The court's finding in this regard should not come as a total surprise to the NISD. The NISD's general counsel was aware, at least by March 1, 1990, that the Texas Education Agency no longer intended to "back up district administrators who are challenged in their attempts to

deny students the right to attend school simply because their parents or guardian do not reside within the district." These words are from a letter the NISD's general counsel wrote to another school district client. *See* Exhibit H to Plaintiff's Motion for Summary Judgment.

students' circumstances are discovered, the NISD has promptly asked the students to leave school.

"White flight," however, did not, to any degree, motivate the Plaintiffs to seek Naomi's admission to the NISD's Central Middle School. In this regard the record is uncontroverted. In addition to the testimony previously highlighted, the statistics also support the Plaintiffs' position that Naomi was fleeing a troubled family life, not the racial composition of her Orangefield school. The Orangefield Independent School District's student population is 97% white and 3% "other." Counsel for the NISD candidly admits that the district is defending this case solely out of a fear that a ruling in Naomi's favor would open the floodgates to students fleeing neighboring school districts with higher percentages of black students. The court believes existing state law adequately addresses the NISD's fears of overcrowding. § 21.031 only requires the NISD to admit students residing in the district with their parents or legal guardians, or students who live separate and apart from their parents or legal guardians *and* whose primary purpose for residing within the district is not to attend public school there. The NISD has demonstrated that, in the past, it has ably policed applicants in order to screen those who seek admission or have surreptitiously gained admission to the NISD for purposes not sanctioned by § 21.031. Naomi's primary purpose for residing in the district was to stabilize her family life. The state has expressed its interests by enacting § 21.031. The NISD's interest in avoiding white flight-induced overcrowding in its schools is adequately addressed by § 21.031 and by any reasonable procedures which the NISD may employ to verify a student's residence and purpose for residing within the NISD. However, the NISD's admissions policy that seemingly ignores § 21.031(d) is simply overbroad.

The NISD also argues that if a student lives separate and apart from a parent or court appointed guardian, school officials will not have local access to an adult authorized to consent to matters regarding the student's academic and health care needs.

However, as my colleague in this District has alluded to, a properly executed power of attorney form, such as the one procured by the Plaintiffs herein, should suffice to meet any concerns the NISD may have regarding parental responsibility. *See Byrd v. Livingston Independent School District,* 674 F.Supp. at 228 (Parker, J.)

Even were the court to apply the "rational basis" test, a form of judicial scrutiny more deferential to the NISD's policy, the result would be the same. Just as the NISD's policy does not further a substantial state interest, it likewise is not rationally related to a legitimate state interest. Accordingly, the court finds that the NISD has created a class constituted by minor children, such as Naomi, who live in the NISD separate and apart from a parent or court-appointed guardian and whose primary purpose for residing in the NISD is not to attend school there. By promulgating and enforcing a policy whereby members of this class are refused admission to NISD schools, the NISD has unlawfully abridged the rights of these children under the Equal Protection clause of the 14th amendment to the United States Constitution. *See Byrd v. Livingston Independent School District, supra; Horton v. Marshall Public Schools,* 769 F.2d 1323 (8th Cir.1985).

### D. The Due Process Clause

Through the promulgation and enforcement of the admissions policy discussed above, the NISD creates an irrebuttable presumption of nonresidence. Pursuant to NISD policy, a minor who lives separate and apart from his parents or court appointed guardian, regardless of his or her purpose for residing within the school district, can never be a resident of the NISD and thus can never attend the district's free public schools. Applying to this policy the same judicial scrutiny as outlined in Section C of this opinion, the court finds that this irrebuttable presumption impermissibly infringes upon the Plaintiffs' rights under the 14th amendment to substantive Due Process. *See Martinez v. Bynum,* 461 U.S. at 330 n. 10, 103 S.Ct. at

**950**

1843 n. 10; *Horton v. Marshall Public Schools*, 769 F.2d at 1331–1332.

## IV. RELIEF

A judgment will issue declaring the NISD's admissions policy void as violative of both state and federal law. The court finds the record unclear as to the precise number of days Naomi Lyn Lyons was prevented from enrolling for school in the NISD. Accordingly, for purposes of assessing nominal damages, the Plaintiffs shall submit an affidavit clarifying this matter. Finally, the Plaintiffs are entitled under 42 U.S.C. § 1988 to their costs and reasonable attorneys' fees. Costs are to be taxed against the defendants. Counsel for the Plaintiffs shall submit an affidavit regarding attorneys' fees and a proposed judgment.